ROME RY. & LIGHT CO. v. FLOYD COUNTY, GA., et al.

(District Court, N. D. Georgia.   December 15, 1915.)

No. 26.

STREET RAILROADS �köm31— FRANCHISE TO USE STREETS—RIGHTS IN REBUILT BRIDGES.

Act Ga. Aug. 15, 1914 (Acts 1914, p. 271), which is a special act vesting in Floyd county full title to and control over certain bridges in the city of Rome, with authority to condemn, tear down, and rebuild such bridges, and to require any public service corporation, as a condition to the right to use the new bridges, to pay a certain proportion of their cost, *held* not to violate the constitutional rights of a street railway company having a franchise to use the old bridges, but a legitimate exercise of the police powers of the state and valid.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 67, 68; Dec. Dig. ⊱köm31.]

In Equity. Suit by the Rome Railway & Light Company against Floyd County, Ga., and the Board of Commissioners of Roads and Revenues of Floyd County, to wit, J. G. Pollock, J. S. Davis, C. L. Conn, C. M. Young, P. C. Griffin, and W. H. Horton. Decree for defendants.

---

Dean & Dean, of Rome, Ga., and Trabue, Doolan & Cox, of Louisville, Ky., for complainant.

M. B. Eubanks, J. Branham, and Maddox & Doyal, all of Rome, Ga., for defendants.

NEWMAN, District Judge. The case now before the court is a bill brought by the Rome Railway & Light Company against the county of Floyd and J. G. Pollock, J. S. Davis, C. L. Conn, C. M. Young, P. C. Griffin, and W. H. Horton, composing the board of commissioners of roads and revenues of Floyd county. The purpose of the bill is to enjoin the enforcement of an act of the Legislature of August 15, 1914 (Acts 1914, p. 271), with reference to the condemnation of certain old bridges and the erection of new bridges in their places; that is to say, the Second avenue bridge, spanning the Etowah river, the Broad street bridge, spanning the same, and the Fifth avenue bridge, spanning the Oostanaula river, at Rome, in said county of Floyd. The act in question has the following title:

"Floyd County, Control of Bridges in Rome.

No. 487.

"An act to vest in Floyd county full and complete title, jurisdiction over and control of the following bridges within the city of Rome, in Floyd county, Georgia, to wit: Second avenue bridge, spanning the Etowah river; Broad street bridge, spanning the Etowah river; and Fifth avenue bridge, spanning the Oostanaula river; to revoke any and all permits granted by legislative or municipal or county authority to any street railway company, electric light, telegraph, telephone or gas company to lay tracks and operate cars on and over said bridges or to place wires or pipes and operate the same on and over said bridges; to repeal all franchises heretofore granted to all such public service corporations to operate on and over said bridges, whether granted by legislative, county or municipal authority upon condition; to authorize the county authorities of Floyd county to condemn and remove the present bridges and to build new bridges at the same points, and to authorize the county to acquire the necessary lands for the purpose of constructing bridges wide enough to meet the demands of public travel; to authorize said county to require of any street railway company or electric railway company desiring to lay the tracks on and operate its cars over said bridges, or either of them, to pay to said county a sum equal to one-third of the actual cost of building either of said bridges before any such company shall be allowed to lay any tracks, place any wires or other equipment or operate any cars on or over such bridge or bridges, and to fix the rights of such corporation by reason of such payments; to grant to the county authorities of Floyd county the exclusive right and jurisdiction to grant permission and franchises to persons, firms and corporations exercising public service functions, to operate on or over said bridges, and to prescribe the terms and limitations of such grants; to provide that any person, firm or corporation desiring to contest the validity of this act shall do so by injunction proceedings before the beginning of the work of tearing down and removing the old bridges, and not otherwise; to provide for the acceptance of this act by the county and city authorities, and for other purposes."

The first section of the act places all right, title, and interest in the bridges named, together with full jurisdiction over and control thereof, in the county of Floyd, such jurisdiction to be exercised by the authorities of Floyd county.

The second section provides that all permits and franchises heretofore granted, either by the General Assembly, the municipal au-

thorities of the city of Rome, or the county authorities of Floyd county to any street railway company, electric light company, or other companies named, to lay tracks and operate cars on and over said bridges, or either of them, or to place any wires, pipes, and equipment and operate the same over said bridges, are revoked and repealed so far as the same apply to any future bridges hereafter to be constructed under this or any other law, unless the said companies will conform to the reasonable terms and conditions required by the county authorities.

The third section gives to the county of Floyd authority to condemn and remove the present bridges and to build new bridges at the same sites, and it is allowed to acquire any land necessary for the purpose, etc., and all public service corporations, street railway companies, telegraph, telephone, light and gas companies are required, when notified to do so, to remove all tracks, wires, pipes and other equipment from said bridges and each of them, as required by the county authorities.

The fourth section is as follows:

"Be it further enacted, that the county authorities of said county are hereby given the exclusive right and jurisdiction to grant permission and franchises to persons, firms and corporations, exercising public service functions, to operate on and over said bridges, and to place railway tracks thereon and to operate cars on and over said bridges, and to prescribe the terms and limitations of such grants; and the county authorities of said county are authorized to require of any street railway company or electric railway company as a condition precedent to the laying of tracks, placing of wires and operating cars on and over said bridges, that it pay to said county a sum equal to one-third of the actual cost of the building of said bridges, and the sum shall be paid to the treasurer of said county before any such company shall be allowed to lay any tracks, to place any wires or other equipment or operate any cars on and over such bridges, but any corporation now having a franchise shall have the right to use any new bridge upon complying with the reasonable conditions imposed by the board of commissioners and the terms of this act."

The fifth section is as follows:

"Be it further enacted, that any railway company, electric railway company or other public service corporation, paying the sum required under and by the preceding section shall acquire only the same rights to operate on and over said bridges as they may have on and over the streets leading to and from such bridges, and shall not be deemed to have acquired any right, title or interest in such bridges, or control over the same."

The sixth section provides that any person, firm, or corporation desiring to contest the validity of any part of this act shall do so by injunction proceeding before the beginning of the work of tearing down and removing the bridges, and for notice to all persons, firms, and corporations of the time when work was to begin by publishing notice thereof by the chairman of the board of commissoners in the newspapers in which sheriff sales are advertised, this notice to state when the work was to commence, as near as practicable, and the estimate of the cost of each bridge, said notice to be published once a week for 2 weeks, the last publication to be at least 30 days before the work was to begin, etc.

No question is made in the bill but that the terms of this act in sections 6, 7, and 8, have been complied with. The real attack is upon the constitutionality of the act as against the rights of the plaintiff company.

A great many acts, ordinances, and resolutions have been presented to the court as giving rights to the plaintiff to occupy these bridges without being required to pay a part of the cost of the same, as provided in this act. There is some doubt about whether the provisions of this act apply to corporations which already have franchises to go upon these bridges or any of them, if they comply with the reasonable requirements of the county commissioners with reference to the occupancy of the same, but I shall assume for the purpose of disposing of the case that the county commissioners will require them to pay one-third of the cost of the bridges before allowing their tracks to be laid and their cars to be run over the same.

This bill was evidently passed in the exercise of the police power of the state. It provides for the condemnation and tearing down of the old bridges in the interest of and for the safety of the public, and, for the same reason, for the erection of new bridges. It is perfectly clear that the Legislature has the power to pass this act in the exercise of the police power. Where the life and safety of the public is endangered, it is perfectly clear that the Legislature may authorize the destruction of the bridges, if, indeed, the county authorities would not themselves have such power. Also it seems to me to be perfectly clear that even if the plaintiff company, or any of its predecessors, had acquired rights as to the use of these bridges, such rights would be entirely destroyed when the bridges became useless and dangerous and large expense would necessarily be involved in the erection of new bridges. The power would, I think, then exist to fix such proportion of the cost of erecting new bridges to be borne by the street railway companies desiring to occupy the same, as the Legislature might deem reasonable, provided it was not so grossly unfair as to render the same entirely unreasonable and unjust. All of this relates to the plaintiff upon the assumption that it has some rights in the bridges by what has occurred heretofore, either by action of the Legislature, or of the county authorities, or of the municipal authorities of Rome.

I have gone carefully through all of the acts of the Legislature and the ordinances and resolutions as stated, and I find nothing whatever in those which gives to this company any such vested interests, or such right to occupy and use these bridges, as would give it any right to object to this act or to the terms of the act. Everything which I have been able to find which it is claimed gives any vested right in these bridges is so qualified, or there are such provisos, or in many instances such direct terms, as to make the right to occupy the bridges subject to revocation or to discontinuance by proper authorities. Certainly there is nothing in any of them which is sufficient to justify its claim of right to occupy the same in case the old bridges are destroyed and new ones built, except upon such terms as the Legislature might prescribe.

I do not think that the decision of the Supreme Court of the state in County of Floyd v. Rome Street Railroad Co., 77 Ga. 614, 3 S. E. 3, is important here, because we now have a distinct act of the Legislature, which I have recited above, providing for the destruction of the bridges and the building of new bridges, and fixing the terms upon which corporations, such as the plaintiff, may occupy them. In my opinion there is nothing whatever in the bill or in anything to which it refers which gives the plaintiff company any right to enjoin the enforcement of the act of the Legislature of August 15, 1914.

I think the defendants are entitled to a decree dismissing the bill, and such a decree may be taken.