THE COUNTY OF FLOYD *vs.* THE ROME STREET RAILROAD COMPANY.

The corporate limits of the city of Rome extended to the further banks of a river, and the authorities of Floyd county built a bridge across the river, connecting a street of the city with its continuation beyond the river, and placed the bridge under the control and management of the municipal authorities, who took charge of it and engaged to keep it in repair, but stipulated that, in case of its destruction by flood or from any other cause, they should not be bound to rebuild it. Under the power contained in its charter, and with the consent of the corporate authorities both of the county of Floyd and the city of Rome, a street railroad company constructed its tracks across the bridge and ran its cars backwards and forwards over it until the bridge was washed away by a flood. The county replaced the old bridge by a new structure upon the same site. The company set about laying its tracks over this new bridge, but the county authorities objected, unless the company

would agree to pay for the privilege of using the bridge, and upon refusal to do so, filed a bill to enjoin the use of it until the county should be compensated therefor:

*Held*, that the injunction was properly refused.

(*a.*) The bridge, as originally constructed and as now constructed, is wholly within the limits of the city of Rome. The bridge forms a continuation of the street of the city across the river, and is a part of such street.

(*b.*) A distinction between a street and a highway in respect to such use is not tenable.

(*c.*) A railroad operated by horses on a public highway is not an appropriation of that highway to a different use.

(*d.*) The legislature, unless restricted by the State constitution, may, even without the consent of the municipality, and without allowing it compensation, authorize railroads to be laid in its highways, but the statute may require the consent of the municipality.

(*e.*) Where the consent of the county authorities to the use of the bridge had been given, and the condition on which it was accorded was accepted and acted on by the company, it became a binding contract until the license was revoked by the only authority having power to revoke it.

(*f.*) Where any part of a public street or highway is washed out or otherwise destroyed by any means, and the damage is repaired by a new structure upon the portion thus destroyed or rendered unfit for use, this does not give the county a right to exact additional compensation from a railroad company, which, previously to the injury, used the street or public highway with the assent of the municipality, where the railroad company proposes to make the same use of the street or highway after it has been repaired.

(*g.*) The act of October 7, 1885, did not affect the right of the railroad company to the use of the bridge, which had previously accrued. That act was not intended to restrict the company's franchise, but to extend it upon the conditions named therein.

March 5, 1887.

Roads and Bridges. Streets and Sidewalks. Municipal Corporations. County Matters. Railroads. Easements. Before Judge MADDOX. Floyd County. At Chambers, February 4, 1887.

Reported in the decision.

J. BRANHAM, for plaintiff in error.

DABNEY & FOUCHE', for defendant.

HALL, Justice.

On the 12th of December, 1884, an act of the General Assembly of the State was approved, entitled "An act to incorporate the Rome Street Railroad Company, and to define its powers, the mayor and council of the city of Rome having given its consent to the authority hereinafter granted, said consent being evidenced by a certified copy of the official action of said mayor and council exhibited in both branches of the legislature before the passage of this bill."

The second section of the act gave power and authority to the corporation " to survey, lay out, construct and equip, use and employ street railroads in the city of Rome and Floyd county, to-wit: from the railroad depot in East Rome, through Howard street to Broad street, and through the whole length of said Broad street, and along the extension of Broad street to the bridge across the East Tennessee, Virginia and Georgia Railroad in the town of Forrestville, and also through South and Bridge streets or any parts thereof, and through Court street and any other street in said city, and through any and all future extensions of said streets, or any of them; and said company may use, as motive power for their cars, horses or electricity or underground cables driven by steam, or any other appliance that may hereafter be invented or used as motive power." The bridge that spans the river at the foot of Howard street, at that time belonged to the county of Floyd, and by it was placed under the control and management of the authorities of the city of Rome. The Street Railroad Company, which was then being formed, applied to the municipal authorities of Rome for leave to lay its rails on, and to run its cars over, this bridge at the foot of Howard street. In taking charge of this bridge and engaging to keep it in repair, the city authorities stipulated that, in case of its destruction by flood or from other cause, they should not be bound to rebuild it. Upon the making

of this application by the Street Railroad Company, the city authorities applied to the commissioners of roads and revenues of the county for their consent to the use of the bridge as contemplated by the company, and that body, on the 6th of October, 1884, passed an order in which it was stated that they " would not object to the city of Rome granting the right to the Street Railroad Company to cross the Howard street bridge, provided no obstruction to public travel should arise therefrom; and also that the franchise be limited as to time." They further ordered that permission be granted to said street railroad company to construct its tracks upon the public roads between Rome and Forrestville, provided the same did not interfere with public travel.

Under the powers granted them in their charter, and the consent of the corporate authorities both of the county of Floyd and of the city of Rome, the street railroad company constructed their tracks across the bridge at the foot of Howard street, and ran their cars backwards and forwards over the same, until the bridge was washed away by a flood in the month of April, 1886. The county replaced the old bridge by a new structure upon the same site. Then the street railroad company set about laying its rails over this new structure; to which the county authorities objected, unless they would agree to pay for the privilege of thus using the bridge. This they refused to do; and this bill was brought to enjoin their use of the bridge, until they compensated the county for the servitude to which it was subjected. Upon the hearing of the application, the chancellor refused the injunction prayed for by the county; and to this decision exception was taken by the complainant in the bill.

The only question made by the record, therefore, is, whether the legislature has authorized the street railroad company to appropriate this bridge to its use in the manner claimed by it, without the county's consent, and without making it compensation. This bridge, as originally

constructed and as now constructed, is wholly within the limits of the city of Rome, as appears from an act approved on the 17th of February, 1874 (Acts, p. 199). Sec. V of said act declared, " That the boundaries of said city shall extend to and include the southeastern or opposite bank of the Etowah river, and the northwestern or opposite bank of the Oostanaula river at all points where said rivers are adjacent to said city."

The bridge forms a continuation of the streets of the city across the river and is a part of the same. Section 5 of the code declares that " highway " or " road " includes bridges over the same. Although, " a distinction has been suggested between highways in the open country, and streets within the limits of cities or populous villages, according to which the latter may be used for more various uses than the former, as for laying gas and water-pipes, or for any other like purposes conducive to the comfort and health of the inhabitants, but as both the highway and the streets are appropriated for the same general purpose, and a highway in a district sparsely inhabited at one time may, by the growth of population, become a street in a city, this distinction does not appear to rest on a sound basis." Pierce on Railroads, 232, and cases cited in notes 2 and 3.

The laying of railroad tracks in a public highway or street does not subject it to a new use or servitude. Its use " is not confined to the precise mode or kind of use which was in view at the time of the taking, but may extend to other modes which were then unpracticed and unknown. When property has been taken for a public use, and full compensation made for the fee or a perpetual easement, its subsequent appropriation to another public use, certainly if one of a like kind, does not require further compensation to the owner." *Id.* 233.

A railroad operated by horses on a public highway is not an appropriation of that highway to a different use. In some States the decisions go so far as to hold that the

appropriation of a highway to the use of a railroad pro-pelled by steam, would not change the use to which it was originally dedicated, while in others they are just the con-trary.   Upon this subject, *vide* Pierce Railroads, 234–240, inclusive, with citations in the notes.

"The legislature, unless restricted by the State consti-tution, may, even without the consent of a municipality, and without allowing it compensation, authorize railroads to be laid in its highways.   If the city or town is deemed the owner of the fee, it holds the interest as trustee of the public, without title to compensation as a proprietor.   The statute, however, may require the consent of the munici-pality."   Pierce on Railroads, 246, and citations in note 5.

It appears from those cases that the law, as thus laid down, has been recognized and acted upon in a number of States of the Union, including our own State.   *Vide*, espe-cially *The Savannah & T. R. Co. vs. Savannah*, 45 *Ga.* 602; *City of Atlanta vs. Gate City Gas Light Company*, 71 *Ga.* 123, 125, where this question is examined and dis-cussed.

But even had the consent of the county of Floyd been required to this use of the bridge by the street railroad company, that assent was given, and when the condition on which it was accorded was accepted and acted upon by the company, it became a binding contract until the license was revoked by the only authority having power to revoke it.   "Where the statute authorizes the laying of rails on a highway, with the assent of the municipal body, such assent, when given, is irrevocable."   Pierce Railroads, 247 and citations in note 9.

The precise point insisted upon by counsel for the county is, that where any part of a public street or highway is washed out or otherwise destroyed by any means, and the damage is repaired by a new structure upon the portion thus destroyed or rendered unfit for use, this gives the county a right to exact additional compensation from a railroad company which, previously to the injury, used the

street or public highway with the assent of the munici-
pality, where the railroad company proposes to make the
same use of the street or highway after it has been re-
paired.   We certainly know of no case which has carried
the right of compensation for its use to this extent, and
think that its recognition and enforcement by the courts
would work great injury to the prosperity of the com-
munity.   The right of this corporation to the use of this
bridge accrued, as it seems from the record, and was com·
plete, before the passage of the act of October 7th, 1885,
amending its charter and giving it authority to extend its
line over the towns of East Rome, South Rome, Forrest-
ville and DeSoto, and as far as five miles beyond the cor-
porate limits of the city of Rome, along any public road
leading into the city.   And the proviso contained in the
second section of that act, requiring that the consent of
the board of commissioners of roads and revenues of the
county of Floyd shall be had, before the company shall
extend its line along any of the public roads outside of
the corporate limits of the said towns, has no application
to that portion of the street railroad which crosses the
bridge located at the foot of Howard street and passes into
these towns.   This amendment was not intended to restrict
or limit their franchise, but to extend it by its compliance
with the conditions named in the act.

   Judgment affirmed.