## COLONIAL FURNITURE CO v CLEVELAND UNION TERMINALS CO

Ohio Appeals, 8th Dist, Cuyahoga Co

No 13244. Decided Jan 29, 1934

Payer, Corrigan & Cook, Cleveland, and Lloyd Schwanger, for plaintiff in error.

Boyd, Brooks & Wickham, Cleveland, for defendant in error.

BLOSSER, PJ, MIDDLETON, J, (4th Dist) and SHERICK, J, (5th Dist), sitting.

**OPINION**

By SHERICK, J.

From the voluminous and controverted evidence in this action the trial court found that the open plan of construction carried on in Ontario Street was performed without negligence, and without unreasonable or unnecessary delay, and that the method of construction adopted was reasonable and proper under all the circumstances. This conclusion reached by the trial court, which is supported by much creditable evidence, has cast around it the same sanctity that assures repost to a jury's verdict on the facts, and for which a reviewing court may not substitute its judgment. It therefore remains for this court to determine if the judgment entered on the conceded facts, that is, in that the plaintiff did suffer a temporary damage to its leasehold estate by reason of the improvement's interference with its right of ingress and egress, and access to and from its premises, · its impaired right to light and air and freedom from dust and noise, is contrary to law, and deprives the plaintiff of its property rights without compensation therefor.

The legal question presented may be thus stated:

May a public service corporation, to-wit: a union depot company organized for private profit, and expressly authorized by statute to undertake the accomplishment of its purpose of creation, which has been found conducive to public necessity and convenience; enter into a contract, sanctioned by statute, with a municipality which is to pay no part of the cost of the improvement, and is permitted by the municipality to occupy its streets during construction, which causes incidental and temporary damage to an abutting owner by limiting his properties' accessibility, and impairing his right to light and air, and subjecting it to noise and dirt, all necessarily incident to the construction process; and be held liable for such damage in the absence of a negligent prosecution of the work or any undue protraction thereof, when the plan pursued is reasonable and designed to accomplish the project at a minimum of expense to the utility, and a minimum of time and danger to the public, and there is no direct encroachment upon or actual· taking of physical possession of the private property of the abutting owner?

The question is made in this action as to whether or not a terminal subway creates an additional servitude upon the street, we deem it expedient first to consider that subject in view of what may be hereinafter concluded. It is in evidence that this subway is not only to carry into and from the terminal station trains operating between Cleveland and other cities, but is also to accommodate rapid transit trains operated within the city for the benefits of its citizens; in this latter respect, its use is amalagous to street railway service. All these trains are to be operated by power other than steam.

It is settled in this state that steam railroads and elevated roads are an additional burden on a street's use, and that street and interurban railways are ordinarily not such an additional burden. We are unable to find that Ohio courts have ever given expression as in which category terminal companies and subways belong. In 10 R.C.L. 106 (§92) it is stated as a general rule that subways are not an additional servitude. This view is found ably discussed in the case of Sears v Crocker, 184 Mass., 586, 100 Am. St. Rep. 577, 69 NE 327. The case of **Smith et v Central Power Co., 103 Oh St 681**, involved the erection of poles in a city street for the distribution of power, and the reasoning of the court therein could just as well have been made in the Sears case supra. A subway, such as this court is now considering, in part serves the local needs of the people of the City of Cleveland and helps to eliminate the congestion of the city's streets, and facilitates and expedites travel, and in that respect its purpose and use is like unto a street railway. And now considering that the subway is used by trains entering and leaving Cleveland from and to other cities, it is apparent that its use in that respect is similar to railroads not powered by steam and interurban railways. It eliminates stations for each road, and minimizes tracks and street railroad crossings and danger to the public generally. And considering further its use in toto, we recognize, that an abutting owner is not denied access from the public street to his property, neither is his right to light and air affected nor is he subjected to dirt and noise thereby. We can quickly perceive that this may not be true in case of steam railroads or elevated roadways in a city street. Without reiterating the reasoning of many cases as to why public streets in populous communities must now carry constantly increasing facilities for expediting communication, transportation and required services to the public, we unhesitatingly reach the conclusion that a subway, as a necessary incident to a terminal plan, is not an additional servitude upon or in the street which it mines.

The defendant first directs our attention to the early and oft cited case of **Clark v Fry, 8 Oh St 358**, and correctly says that the doctrine therein announced is applicable to the question made. It is therein said:

"The right of transit in the use of public highways is subject to such incidental, temporary or partial obstructions as manifest necessity requires, and among those are the temporary impediments necessarily occasioned in the building and repair of houses on lots fronting upon the streets of a city, and in the construction of sewers, cellar drains, etc. These are not invasions, but qualifications of the right of transit on the public highway, and the limitation of them is, that they must not be unnecessarily and unreasonably interposed or prolonged."

In the interest of collecting authorities we could with ease unduly prolong this opinion, but this is not our purpose. We shall however adopt the language of several courts, among which is Atwater v The Trustees of Canandaigua, 194 N. Y. 602:

"Where persons lawfully engaged in the construction of a public improvement are compelled temporarily to inflict consequential damages upon the property of an adjoining owner without actually trespassing upon it, such injuries are damnum absque injuria, and no action lies to restrain them or to recover for the injuries thus inflicted. This rule itself is well established and is essential in the construction of public works by municipal corporations or by public authority."

This to our notion well states the general rule, with the reservation of course that the utility constructed or permitted be not purely a proprietory function. The case of Northern Transportation Company v Chicago, 99 U. S. 635 is in point. The court there said:

"That cannot be a nuisance such as to give a common law right of action which the law authorizes. * * * A legislature may and often does authorize and even direct acts to be done which are harmful to individuals, and which without the authority would be nuisances; but in such a case, if the statute be such as the legislature has power to pass, the acts are lawful, and are not nuisances, unless the power has been exceeded. In such grants of power a right to compensation for consequential injuries caused by the authorized erections may be given to those who suffer, but then the right is a creature of the statute. It has no existence without it."

The plaintiff makes the claim that the immunity of public bodies extends no further than to one who contracts with it for the performance of the work to be done for it, and not to one like the defendant herein who constructs and operates a public utility under a permit for its own per-

sonal profit. It is well recognized that operation of public utilities are of two kinds. That is, those that are publicly or privately owned. We are unable to appreciate any such distinction. The privately owned utility serves the people of the political subdivision wherein it operates with its permission and under its direction. It affords a service which perhaps the public body could not furnish by reason of financial inability. An instance of such character is to be found in those companies who explore for and transport natural gas for great distances. To say that such a public servant might not repair its lines in the streets of a city which ·it serves without constant fear of restraining orders and damage action for causing inconvenience to abutting property owners would be to make such service and convenience impossible. It only operates by legal sanction, and so long as it employs a reasonable and practical method of construction or repair without unnecessary protraction or · negligent prosecution it should be immune from damages for temporary inconvenience to abutting owners.

**Article I, §16 of the Constitution of Ohio**, provides that, "Private property shall ever be held inviolate but subservient to the public welfare." It was necessary and subservient to the public welfare that a subway be made under Ontario Street. The plaintiffs possession of its abutting property was in nowise disturbed. It was not "taken" for public use. It · but suffered temporary inconvenience in its easement in and to the public street; without doubt its hardship was greater in degree than that of the public generally, by reason of its close proximity to the operation. It must look for its recompense to the future advantages' to be secured by it and to the public generally. As said in Clark v Fry, supra, this was not an invasion of a property right held inviolate by constitutional provisions, but a qualification of the right of transit or easement in a public street. The plaintiff's property was subservient to the public welfare.

The 14th Amendment to the Federal Constitution is subject to the same interpretation, and affords no greater aid and comfort to the plaintiff. **Article XIII of §5 of the State Constitution** is also invoked. It provides that a right of way shall not be appropriated without compensation therefor. Our prior comments · fully deny its application in this action.

But one further inquiry remains. Do the statutes of this state provide that an abutting owner be compensated for temporary interference with his street easement? Plaintiff directs our attention to §3714 GC, which provides, that municipalities shall keep their streets open, in repair, and free from nuisance. This section also empowers a municipality to regulate the use of its streets in the manner provided by law. The law provides that it may contract with terminal companies and provide for temporary interference with traffic when necessary in the construction of tunnels. §9163 GC. Such construction is not a nuisance as herein previously indicated.

Sec 8765 GC pertains to steam railroad tracks laid upon or over a street, and provides that such a company shall be responsible for injury done to private property in such case. This statute makes no mention of any such compensation when tracks are placed below the surface grade.

Sec 9146 GC has to do with interurban railroads and provides for payment of damages to nearby property owners when such company elevates or depresses its tracks. The defendant, however, is not an interurban railroad company.

The defendant points out that, §9163 GC, which provides for construction of terminals by union depot companies, makes no mention of damages for any interference with adjoining properties. But the plaintiff counters with the claim that §9167 GC gives such a right of compensation to those who suffer inconvenience. The section reads:

"The company controlling and operating such union depot and terminal property shall be liable to the public and persons who contract with such company, for all contracts made and damages caused by it, and for all damages, costs, and expenses which arise from the fault or neglect of its officers and employees."

The terms of this act clearly indicate that this section does not apply to the construction period of a terminal project. It makes no reference, as do other related sections commented upon, to damages to nearby property interfered with at construction; but rather fixes liability upon the operating company for contracts made and damages caused by it as an operating company.

That portion of §9162 GC pertaining to the power and privileges of union depot companies refutes the plaintiff's claim made for §9167 GC. §9162 GC says that such companies, "shall have all the powers given to railroads by the laws of this state, for the purpose of acquiring, constructing and

operating its depot, tracks and terminals."
§8765 GC previously considered is to be
found in Chapter 1, Subdivision 1, Rail-
roads, and is styled "Special Powers." It
therefore follows that union depot com-
panies have the same rights and immuni-
ties possessed by railroads in the matter
of its responsibility in construction to near-
by grounds.

We find no statute which gives the plain-
tiff a right to recover damages for the in-
convenience suffered and loss in rental
values.

We would in conclusion direct attention
to two Ohio courts which have applied the
principal rule herein adopted. The case
of **Glidden v Cincinnati, 4 O. Dec. (N.P.)
423**, and **Darling v Dayton Union Railway
Company, 30 N.P. (N.S.) 129**; the Court of
Appeals Report of the last noted case is
to be found in **13 Abs 606**.

The judgment is affirmed.

BLOSSER, PJ, and MIDDLETON, J, concur.