HANCOCK, marshal, *v.* RUSH.

No. 11008.   JANUARY 15, 1936.

*S. P. Cain* and *H. H. Merry,* for plaintiff in error.

*Copeland & Dukes* and *Wilcox, Connell & Wilcox,* contra.

GILBERT, Justice. ■ In order properly to consider the assignments of error it is desirable first to set forth certain provisions of the act of 1925 (Ga. Laws 1925, p. 1480), under the authority of which the street-improvement bonds were issued. That act provides: "That the mayor and council of the City of Thomasville is hereby authorized and empowered to establish and change the grade of any streets, avenues, alleys, lanes, and other places in the City of Thomasville, and to improve the same by paving, macadamizing, and draining the same whenever in its judgment the public convenience and welfare may require such improvements, subject only to the limitations prescribed in this act." Then follow provisions as to resolutions of the mayor and council declaring such work necessary, advertisement of such resolution, protests from owners, and the statement that "if the owners of a majority of the land liable to assessment to pay for such improvement of any such highway shall not, within fifteen (15) days after the last publication of such resolution, file with the clerk of said city their protest in writing against such improvement, then said mayor and council shall have power to cause said improvement to be made and to contract therefor." Then are set out provisions for the proportions in which the abutting property owners, and the city where an owner, shall pay for the cost of the improvements, and provisions authorizing the mayor and council to enact all ordi-

nances and establish rules and regulations that may be necessary to require the owners of property subject to assessment to pay the cost of improvements of the city property on which the owners' properties abut, and providing for piping which shall be included in the general assessment, resolution for contracting for the work, etc. It is further provided: "Sec. 6. As soon as said contract is let, and the cost of such improvements, which shall also include all other expenses incurred by the city incident to such improvements, in addition to the contract price for the work and materials, is ascertained, the said mayor and council shall by resolution appoint a board of appraisers, consisting of the chairman of the committee on streets and sewers of the council, the clerk of the city council, and the street superintendent, to appraise and apportion the cost and expenses of the same to the several tracts of land abutting on said improvement as hereinbefore provided." Then follow provisions for returning and filing the report, hearings, notices, and reviews. It is further provided that "Assessments in conformity to said appraisement as confirmed by council shall be payable in ten equal installments and shall bear interest at the rate of not exceeding seven per cent. per annum until paid, payable in each year at such time as the several assessments are made payable each year. The said mayor and council shall by ordinance levy assessments in accordance with said appraisement and apportionment as so confirmed against the several tracts of land liable therefor; provided, however, that the rate of interest to be taxed shall not exceed one per cent. over and above the rate of interest stipulated in the bonds herein provided for."

Section 7 fixes the dates on which the principal and the interest may be paid. "Sec. 8. That such special assessment and each installment thereof, and the interest thereon, are hereby declared to be a lien against the lots and tracts of land so assessed from the date of the ordinance levying the same, coequal with the lien of other taxes and prior to and superior to all other liens against such lots or tracts, and such lien shall continue until such assessment and interest thereon shall be fully paid, but unmatured installments shall not be deemed to be within the terms of any general covenant or warranty. Sec. 9. That the said mayor and council, after the expiration of thirty days from the passage of said ordinance confirming and levying the said assessment, shall

by resolution provide for the issuance of bonds in the aggregate amount of such assessment remaining unpaid, bearing date fifteen days after the passage of the ordinance levying the said assessments and to such denominations as the mayor and council shall determine, which bond or bonds shall in no event become a liability of the mayor and council of the City of Thomasville issuing same. One tenth in amount of such series of bonds, with the interest upon the whole series to date, shall be payable on the fifteenth day of September next succeeding the maturity of the first installment of the assessments and interest, and one tenth thereof with the yearly interest upon the whole amount remaining unpaid shall be payable on the fifteenth day of September in each succeeding year until all shall be paid. Such bonds shall bear interest at a rate not exceeding six per cent. per annum from their date until maturity, payable annually, and shall on the face thereof recite the street or streets or other public places for improvement of which they have been issued, and that they are payable solely from assessments which have been levied upon the lots and tracts of land benefited by said improvement under authority of this act. . . Sec. 10. That the assessments provided for and levied under the provisions of this act shall be payable by the person owning the said lots or tracts of land as the several installments become due, together with the interest thereon, to the treasurer of the City of Thomasville, who shall give proper receipts for such payments." Then follows a provision for notice from the treasurer to those whose assessments are due. "And it shall be the duty of said treasurer, promptly after the date of the maturity of any such installment or assessment and interest and on or before the fifteenth day of September in each year, in case of a default in payment of such installment or assessment with interest, to issue an execution against the lot or tract of land assessed for such improvement or against the party or person owning the same for the amount of such assessment with interest, and shall turn the same over to the marshal of the City of Thomasville, or his deputy, who shall levy the same upon the adjoining real estate liable for such assessment and previously assessed for such improvement; and after advertisement and other proceedings as in case of sale for city taxes, the same shall be sold at public outcry to the highest bidder," etc.

(a) The first ground of demurrer is .that "the petition sets forth no cause of action against this defendant," and the second is that "the allegations of the petition are not sufficient to authorize the relief, or any portion of the relief prayed for." Both of these may be considered together. While it is provided in the act that the City of Thomasville is not to be liable on the improvement bonds and they are to be paid only from the assessments, it is made clear that in connection with the power and privilege of issuing the bonds the City of Thomasville is constituted an agency for the collection of the assessments for the benefit of the bondholders, and its proper officers are expressly charged with specific duties. The assessments are declared to be liens against the property affected. The payments shall be made to the city treasurer. In the event of default in payment, the treasurer shall issue executions against the assessed land and turn the same over to the city marshal or his deputy, and it shall be the duty of the latter to levy them on the property liable for the assessment. These provisions are not merely directory. They are mandatory, as the quoted provisions of the act plainly show. It is alleged that the petitioner is the holder of certain bonds. The copies of the two series attached to the petition recite that the bonds were issued in full compliance with the act of 1925 (Ga. Laws 1925, p. 1480), pursuant to proceedings by the mayor and council authorizing the issue, resolution, etc., setting forth the particular property involved, and reciting that the series of bonds do not exceed the amount of the assessments remaining unpaid. It is alleged that demand for payment has been made and refused; that the marshal, whose duty it is to levy the executions delivered to him by the treasurer, has refused, though demand has been made of him to levy them. The City of Thomasville is not liable for the debt, and a suit at law is not maintainable. Manifestly the only remedy available to the petitioner is that of mandamus to compel the marshal to do his duty. "All official duties should be faithfully performed; and whenever, from any cause, a defect of legal justice would ensue from a failure or improper performance, the writ of mandamus may issue to compel a due performance, if there shall be no other specific legal remedy for the legal rights." Code of 1933, § 64-101. It follows that both the first and second grounds of the demurrer are without merit.

(*b*)  The third ground of demurrer is that "the petition shows on its face that there is a nonjoinder of necessary parties plaintiff, in that there is a large number of other bondholders of the same series as are the bonds of petitioner, who are jointly interested in the lien of the assessment against each piece of property assessed, and in the proceeds of the sale under such assessment, and that none of these other bondholders are made parties to the proceeding." There is in the petition no allegation that there are other bondholders jointly interested with the petitioner; and even assuming that they exist, the right of the petitioner is independent of theirs. To require a joinder of all parties having a similar interest would be to impose on the petitioner an unreasonable burden, which might be impossible of performance and defeat his rights under the statute. The special interest of the petitioner is sufficient for him to maintain the action.

(*c*)  The fourth ground of demurrer is that "the petition shows that there are many tracts of land assessed for the payment of the bonds, matured and unmatured, of said series E and said series C, and that petitioner has not pointed out any particular tract on which to levy, nor has he specifically pointed out any particular fi. fa. for defendant to levy, as would be necessary before petitioner could require defendant to levy." It is the plain purpose of the act to require of the marshal the levy of all executions delivered to him by the treasurer, and thus to make available, with as little delay as possible, the necessary funds for the payment of the matured bonds. It is apparent from the provisions of the act that the bonds should describe the property on which the liens were created, and that fi. fas. should issue against such described property. It is alleged that the marshal is in possession of the requisite fi. fas., and it is to be presumed that the officers did their duty and designated the particular property in the fi. fas. Therefore the marshal needs no direction as to the levy. His duty is to levy all of the fi. fas., and they furnish the necessary information to him. There is no merit in this ground of the demurrer.

(*d*)  The fifth ground of demurrer is that "the petition shows on its face that it is an inequitable proceeding, in that petitioner, as an individual seeking to collect his individual claim, is pursuing a proceeding intended to produce, through the medium of fi. fas. in which many others are interested, an amount of money many

times in excess of the sum alleged to be due to petitioner, and without making said other interested parties parties to this proceeding." No method is prescribed in the act whereby a bondholder might proceed to collect what is due him without respect to the interests of others holding bonds of the same series, and the fact that the levies would produce an amount in excess of that to which the petitioner is entitled does not excuse the marshal from performing his duty. The only effect would be to produce for the benefit of bondholders, including the petitioner, those funds which the prescribed levies were intended to produce through sale of the property affected with the lien of the assessments. This ground is without merit.

(e) The next ground is that "the petition appears on its face to be defective, and should be stricken, because it seeks to require the defendant to levy upon and sell property without designating and specifying any particular property to be levied upon and sold, and without naming the owner thereof, and without alleging specific facts necessary to authorize the court to pass a rule absolute requiring the defendant to levy on and sell any specific piece of property." What was said in regard to the fourth ground in paragraph (c) is applicable here.

(f) The seventh ground of demurrer is that "the petition is defective and should be dismissed, for that the petitioner seeks therein an order requiring the defendant to advertise and sell property without showing that a legal demand has been made on the defendant to so advertise and sell such property." It is alleged in the petition that copies of the petitioner's bonds, series E and C, are attached and made a part thereof, and they, together with a copy of a demand by the petitioner through his attorneys on the marshal, are attached. The copy of the demand shows that it is called to the attention of that officer that the fi. fas. are in his hands, that under the act of 1925 it is his duty to levy them, and that demand is made that he do so in order to enforce the payment of installments as contemplated and provided for in said act. The statute specifies his duties, and they include the levy, advertisement, and sale of the assessed property. The notice to him constitutes a sufficient demand. This ground of demurrer is without merit.

(*g*)  The eighth ground is that no copy of any street-improvement fi. fa. is attached to the petition, "nor is there any fi. fa. sufficiently described in the petition, of which this court could pass a rule absolute requiring this defendant to levy any particular execution." It is alleged in the petition that the treasurer delivered to the marshal the fi. fas. which were to be levied on property in the case of unpaid assessments thereon; and it will be presumed that the treasurer properly described the property in the fi. fas. Having that knowledge, it was not necessary that the petition detail the description of the property. Therefore this ground is without merit. It follows that the court did not err in overruling the demurrers.

■  The second assignment of error is that the court erred in overruling the motion that the case be set down for a hearing by a jury, it being claimed that the pleadings made issues of fact which could not be passed upon by the judge. The third assignment of error is that the court erred in considering the affidavit of the petitioner in support of his petition, and in not ruling out such evidence on motion; it being claimed that all evidence should have been referred to a jury, as issues of fact were made under the pleadings. Similar principles applying these points will be considered together. The denials made 'by the defendant are numerous, and will be dealt with in particularity, so as to determine whether or not they made such an issue as could be passed upon only by a jury. It was denied that no interest had been paid on petitioner's bonds, series C and E, since September 15, 1932. This does not create anything more than a subordinate issue, and is not of such substance as to prevent the judge from passing upon the main question. It is denied that demand was made for principal and interest on the bonds, and that there has been a refusal by the city treasurer to make payment of the amount due the petitioner. Notwithstanding it is alleged that demand was made for payment, there are other allegations, not denied, which show that it was really a useless gesture to make such a demand. It is alleged that "a large number of persons who are the owners of the several tracts or parcels of land mentioned and set forth in the bonds of said series C and E, whose names are unknown to petitioner, have failed and refused to pay the assessments against their said property, which assessments matured and became due and payable on

September 15, 1934, September 15, 1933, September 15, 1932, and prior years." The answer of the marshal is that for want of sufficient information he can neither admit nor deny this allegation. It is made plain in the act of 1925 that the treasurer can not make any payments to bondholders except from funds realized from the assessments on the property referred to in the bonds. If the above-quoted allegations of the petition be true (and they are not denied), it follows that the treasurer has not received the funds which can properly be allocated to the payment of the petitioner's bonds. A demand on him, however earnestly made, would be unavailing, as he can not divert to the payment of petitioner's bonds funds raised for any purpose other than that authorized under the specific paving act involved. What is needed to enable the treasurer properly to perform his duties as to appropriate disbursements is for the marshal, after receipt of the fi. fas. from the treasurer, to exhibit a similar efficiency of conduct in office and levy the executions. In so doing he makes it possible for the treasurer to establish and maintain that municipal credit which is a sine qua non in the financial needs of cities and towns of this State. No demand on the treasurer being necessary under the circumstances shown, the mere denial of a demand having been made is without merit.

The denial that the bonds became liens on the property listed therein, that it was the duty of the treasurer to issue the executions, that it was the duty of the marshal to levy them, and that any legal demand has been made on him to levy, involve questions of law and are not referable to a jury. The denial that the petitioner demanded that the defendant levy any particular execution, or levy on any particular property or advertise and sell, is also without merit, for the same reasons mentioned in the foregoing part of this opinion in the ruling on the various grounds of the demurrer. The act enjoins on the marshal specific duties where defaults have been made in the payment of assessments, and it will be presumed that the fi. fas. delivered to him furnish him the necessary information for the performance of his duties. Furthermore, it is a reasonable conclusion from the answer of the marshal that he does not regard it as his duty to levy the executions, in the absence of additional and needless instructions from the mayor and council, and that a most exact and meticulous demand from

the petitioner would not induce him to act. It was also denied that no interest had been collected on the bonds, and that the treasurer would contend that the act made no provision for the payment of interest after maturity of the bonds, and that should such contention prevail the petitioner would continue to lose interest on the sum invested in the bonds. Whether or not the petitioner is entitled to interest after the maturity of the bonds was really not put in issue; and the allegations, properly construed, are only by way of inducement to show the justice of the petitioner's obtaining the payment alleged to be due. To the allegation that the petitioner is the owner of the bonds, the principal amounts of which are not due, but the interest on which is due and unpaid although the interest coupons have been presented and demand made for payment, denial is made by the defendant except as to the ownership of the bonds. Such issue is only subordinate to the main question, and is not sufficiently substantial to require submission to a jury as to whether or not mandamus should lie to compel the marshal to perform the duties enjoined on him by the act of 1925. It is not denied that the requisite fi. fas. have been delivered to him, and the marshal can not justify his failure to levy them by injecting an issue as to a matter between the petitioner and the treasurer.

By way of further answer the defendant alleges that no demand or instruction has been given him by the mayor and council to levy and collect the executions, and that they have failed to prescribe by ordinance or otherwise that such duty is on him, and therefore that it is not shown that it is his duty to proceed. This manner of pleading is begging the question, and sets up nothing that could be seriously regarded as creating an issue. The bonds, as shown by the exhibits attached to the petition, recite a full compliance with the statute authorizing the bond issue, "pursuant to proceedings duly had by the mayor and council of said city in all respects authorizing the same, and pursuant to a resolution duly adopted by the mayor and council of said city" on the 30th day of April, 1928, and on the 12th day of December, 1927. Certainly the mayor and council are estopped to deny such recitals, and all things required to be done as prerequisites to the issuance of the bonds are legally presumed to have been done. No alternative is left to the marshal under the act except to levy the executions when de-

livered to him by the treasurer, and he can not raise an issue which does not exist between him and his superiors who are not made formal parties to the proceeding. It is also alleged in the answer that no fund has been provided for the advertising expense in connection with the levy and sale of the property, that no liability has been assumed by the mayor and council of the city, that if ordered by the court to levy the executions the marshal would be unable to comply with the order, and that it would be unfair and inequitable to require him to assume the obligation. The answer to this contention is that he is proceeded against in his official capacity, and is protected from any individual liability for any expense incurred in the performance of his duties under the mandate of the statute. Furthermore, there is indirectly provided in the act a working fund in favor of the city. The assessments bear interest at the rate of 7 per cent. per annum, and the bonds bear only 6 per cent. interest; thus leaving for the city a residuum for the payment of necessary expenses. It does not become necessary to calculate exactly whether or not the difference in the interest account will be adequate for all necessary expense; and it will be presumed that a full compliance with the statute will not impose any hardship on the municipality or the marshal. The issue sought to be raised that the fi. fas. include assessments for sidewalk improvements, that the act confers no such authority for such paving, and that any assessment for such purpose and any execution therefor are null and void, involves a question of law and not of fact. It follows that no substantial issue of fact was made by the pleadings; and that the court did not err in refusing to refer the case to a jury, and in admitting the affidavit of the petitioner in support of his allegations.

The other assignment of error is that the court erred in granting a mandamus absolute. It is not deemed necessary to set out the affidavit of the petitioner in detail. It is sufficient for the decision on this assignment of error, in order to avoid a further extension of this opinion, to say that it was a substantial equivalent of the allegations of the petition, and made out a prima facie case for the grant of a mandamus absolute. The basis of this conclusion is to be found in what was said in the foregoing part of this opinion in the ruling on the grounds of the demurrer. It remains only to discuss certain contentions made in the brief of

the plaintiff in error, as to why the mandamus absolute should not have been granted. It is urged that the street-improvement bonds are illegal and void, because they include assessments for sidewalk improvements not authorized under the act. We do not regard the point as meritorious. Bouvier defines a "sidewalk" as "that part of a public street or highway designed for the use of pedestrians." In *Atlanta & W. P. R. Co.* v. *A., B. & A. R. Co.,* 125 *Ga.* 529, 545 (54 S. E. 736), it was said: "A street is a highway in a city or town used by the public for the purpose of travel, either by means of vehicles or on foot." We have not found in the Reports of this State a specific holding that a street includes a sidewalk; but it must be said that in a city or town a sidewalk is merely that part of a street or highway which is intended for use by pedestrians. It is generally held in other jurisdictions that a street includes a sidewalk. See Words and Phrases, Series 1, 2 and 3, Title Street, for numerous decisions. Furthermore, a proper construction of the act of 1925 is that the street improvements authorized to be made by the City of Thomasville included those of paving the sidewalks. In the caption of the act it is recited: "An act to authorize and empower the mayor and council of the City of Thomasville to establish and change the grade of any streets, avenues, alleys, lanes, and *other public places* in the said city; and to improve the same by paving, macadamizing, and draining the same," etc. (Italics ours.) In section 1 of the act the same authority is granted, and in section 2 it is provided "That whenever the said mayor and council shall deem it necessary to grade, pave, macadamize, drain, or otherwise improve any street, avenue, alley, lane, *or any part thereof*" (italics ours), the mayor and council, after certain prescribed preliminaries, shall have the power to levy assessments against the abutting property owners, etc. It would be unreasonable for this court to hold that the city might, under the act, legally pave a certain street after lowering the grade thereof, and do likewise with respect to a lane or alley which proceeds therefrom, and at the same time leave a sidewalk adjacent to each so elevated and incongruous as to constitute a positive danger to pedestrians in attempting to use the latter. In our opinion the street-improvement bonds are not void because they include assessments for sidewalk improvements, as the paving and assessments as to such were reasonably comprehended in the act

in question.  No evidence was introduced by the defendant, and under that offered by the petitioner the court did not err in granting the mandamus absolute.

Judgment affirmed. All the Justices concur.