## 30310. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY et al. v. DATRY et al.

INGRAM, Justice.

Defendants appeal from an order of the Superior Court of DeKalb County denying defendants' motion for summary judgment, granting plaintiffs' motion for summary judgment and enjoining the defendants, the City of Decatur, DeKalb County and the Metropolitan Atlanta Rapid Transit Authority and all their officials named in the complaint, "from doing anything directly or indirectly, separately or jointly to proceed in the closing of the 100 block of Sycamore Street and the construction of the MARTA transit station in that block and the rails underground in that block until they first, as by law provided, tender and offer just and adequate compensation to the petitioners for the taking of the property rights of the petitioners that the court has found will be taken by the said parties in the course of completing this MARTA project . . ." We affirm the grant of injunctive relief by the trial court for the reasons stated in this opinion.

Plaintiffs David Datry, Joseph Maas and J. Lester Fraser, own commercial property on the south side of Sycamore Street in the City of Decatur known as 133 Sycamore Street. One of the owners, Mr. Datry, occupies the property at 133 Sycamore Street as lessee, and operates at that location a retail ladies wear business known as "David's." On May 13, 1975, the plaintiffs filed a petition, which they subsequently amended, in the superior court alleging that as owners of land abutting on Sycamore Street they owned fee simple title to the land extending to the center line of the street and that the City of Decatur's only interest in the street was an easement for street purposes. Plaintiffs alleged that the City of Decatur's proposed prohibition of vehicular traffic in the 100 block of Sycamore Street, except for emergency vehicles, would constitute an abandonment of its easement in the street and a taking of plaintiffs' access rights to the public street.

In addition, plaintiffs alleged that at least a portion of the proposed MARTA transit station and pedestrian

mall, to be constructed by the defendants, would be located south of the center line of Sycamore Street directly in front of 133 Sycamore Street and would thus constitute a taking of plaintiffs' property for public purposes. Plaintiffs also alleged that as a consequence of the construction their land "will be subjected to the invasion of smoke, dust, dirt, fumes, odors, high-decibel noise, vibrations and other odious bombardments incidental to the use of large earth-moving machines," and that this activity will constitute a nuisance and, to the extent it deprives plaintiff Datry of the operation of his business, it will constitute a taking of his property.

In their amended complaint, plaintiffs prayed that an injunction issue restraining the defendants from closing Sycamore Street and from commencing construction on the transit station and pedestrian mall until just and adequate compensation is first paid to the plaintiffs for the taking of their property.

The defendants filed answers and motions to dismiss the amended complaint for failure to state a claim. Their defense was that the prohibition of vehicular traffic in the 100 block of Sycamore Street by the City of Decatur would not constitute an abandonment of the city's easement or a closing of the street, because the street would remain open as a pedestrian mall. The defendants asserted that the MARTA transit station-pedestrian mall would be a use of the street consistent with the city's easement, would not constitute an additional servitude on plaintiffs' fee, and accordingly would not involve a taking of plaintiffs' property. Defendants also took the position that any injury plaintiffs might suffer from dirt, noise, etc., occasioned by the construction, would be compensable only in a suit for consequential damages and was not such a claim as would entitle plaintiffs to injunctive relief.

All parties to this litigation have stipulated that "Sycamore Street is a public road and a highway and that no grant has been found of record or otherwise to the City of Decatur or any other governmental authority." On the basis of this stipulation the trial court found that the City of Decatur has an easement by prescription and implied dedication for the public use of the right-of-way of

Sycamore Street in the 100 block thereof and that the plaintiffs, as owners of land abutting Sycamore Street, hold fee simple title to the middle line of the street subject to the easement held by the City of Decatur. This finding is in accord with settled principles of Georgia law (see *R. G. Foster & Co. v. Fountain,* 216 Ga. 113, 123 (114 SE2d 863) (1960); *Long v. Faulkner,* 151 Ga. 837 (1, 2) (108 SE 370) (1921)), and is not contested by the defendants. Therefore, we will accept this conclusion as legally correct.

A hearing was held on July 9, 10 and 11, 1975. On the first day of the hearing, the trial court reserved ruling on the plaintiffs' motion for judgment on the pleadings and the defendant MARTA's motion to dismiss until hearing evidence. The court sustained the City of Decatur's motion to dismiss. However, on July 11 the court rescinded and vacated the order dismissing the City of Decatur and reinstated the city as a party defendant. At the hearing, the trial court also ruled that "insofar as that allegation in . . . plaintiffs' complaint that Sycamore Street is the principal means of access, ingress and egress to that parcel of land at 133 Sycamore Street, the court rules that it has been admitted in the pleadings by MARTA's failure to respond to that allegation and also it has been admitted by the City of Decatur and DeKalb County."

The evidence adduced at the hearing showed that the current plans for the MARTA transit station and pedestrian mall are actually a combination of two separate plans developed independently by MARTA and the City of Decatur. Decatur first developed plans for the courthouse square in the early 1960's as part of a plan to revitalize the downtown area. The original plan called for the creation of a pedestrian mall around the courthouse and entailed a prohibition of vehicular traffic on the streets surrounding the square, including the 100 block of Sycamore Street.

The original MARTA plan developed in the mid 1960's called for the Decatur transit station to be located several blocks south of Sycamore Street along the existing railroad line. Subsequently, Decatur, DeKalb County and MARTA agreed to intergrate the two plans and place the

rapid transit line through downtown Decatur with the transit station constructed entirely beneath Sycamore Street and the mall.

In 1972, however, the combined project was re-designed. According to the new plan, the Charette Plan, the transit station will rise approximately eight feet above the surface of the ground with the pedestrian mall located atop the station. The Charette Plan is the current design for the combined project.

An excellent description of the combined project, as it will appear in the 100 block of Sycamore Street, is provided in the testimony of Mr. Manuel Padron, a civil engineer employed by MARTA. "There would be, as you walk out of that particular store [plaintiffs' property] and you're facing north, you would be in front of a sidewalk about 16 feet wide as opposed to the present sidewalk of about eight to ten feet wide. After the first 15 or 16 feet, then the ground level or the finished mall level would begin to gradually terrace to reach the level that we have been talking about of eight feet which is the level of the top of the mall. There would be a landscaped terrace steps that are provided to avoid any feeling of a wall enclosing or blocking visually the front of the store."

Other testimony adduced at the hearing disclosed that the present width of Sycamore Street, from curb to curb, immediately in front of plaintiff Datry's store is approximately 37 feet, and that the sidewalk is between eight to ten feet wide. These dimensions indicate that the center line of Sycamore Street lies between 26.5 and 28.5 feet from the front of the store and that the structure of the transit station-mall, which will be located approximately 16 feet from the store, will extend approximately 10 feet south of the center line in front of plaintiff's store. Land on the northern side of Sycamore Street has been acquired in fee simple by MARTA because the width of the transit station-mall will be greatly in excess of the present width of the street. There is no evidence in the record establishing the exact location of the underground rapid transit line, or subway. Several maps admitted into evidence at the hearing, however, suggest that the transit line itself will be placed a short distance to the north of the right-of-way of Sycamore Street in the 100 block.

The City of Decatur plans to close the 100 block of Sycamore Street to vehicular traffic when MARTA is ready to begin construction of the combined project which, prior to this litigation, had been scheduled for August, 1975. During the period of construction, MARTA has agreed to maintain the south sidewalks in the 100 block open to pedestrians and to provide five crosswalks over the construction site. After completion of the combined project, the widened sidewalk in front of plaintiff Datry's store will remain closed to vehicular traffic but will be open to pedestrians and emergency vehicles.

An agreement between MARTA and the City of Decatur was admitted into evidence. According to Paragraph 3, Decatur expressly assumed responsibility for "any and all claims which may be brought by any person alleging damages arising out of the prohibition of vehicular traffic in accordance with . . . this agreement."

In Paragraph 7, the parties allocated the costs of the project as follows: "Authority [MARTA] shall be responsible only for those costs and expenses properly allocable to the design and construction of Authority's system and Authority's rapid transit station in the mall area. Those costs and expenses which must be incurred to construct City's [Decatur's] mall in accordance with the development study shall not be costs allocable to the planning and construction of a rapid transit system, and shall be borne by the city."

The agreement also provided that Decatur would convey to MARTA "any and all easements in, across, through and above public property within the confines of city . . . as may be necessary or desirable to facilitate the acquisition, construction, improvement and efficient operation of Authority's system, provided that the Authority's use of such easements shall be compatible with existing public uses for utility and sewerage purposes. The Authority shall be responsible for the acquisition of all other property necessary for the construction of Authority's system."

MARTA, itself, does not have the authority to condemn property, but has contracted with DeKalb County for the county to exercise its power of eminent

domain on behalf of MARTA. See, Ga. L. 1965, pp. 2243, 2266.

At the conclusion of the hearing, the trial court ruled that since the court heard evidence on the plaintiffs' motion for judgment on the pleadings and the defendants' motions to dismiss, the motions were converted into motions for summary judgment. See Code § 81A-112 (B) and (C). In its order, entered July 21, 1975, enjoining the defendants, the trial court found that the prohibition of vehicular traffic in the 100 block of Sycamore Street will constitute a closing of the street and an abandonment of the city's easement; that the closing of the street will deprive plaintiffs of the principal source of commercial access to their property; that the transit station will be constructed on a part of the property owned by plaintiffs in fee simple; that the construction of the project will create such noise, dirt and debris as to substantially deprive plaintiff Datry of the operation of his business and to largely prohibit and preclude pedestrian traffic into his store; and that the closing of the street and the construction of the transit station-mall will entail a taking of plaintiff's property for which defendants have not first tendered or offered plaintiffs just and adequate compensation. The trial court also held that the closing of the street would terminate the city's easement and thus the city would have no interest to convey to DeKalb County or to MARTA.

I. Prohibition of Vehicular Traffic.

Plaintiffs argued in the trial court that an easement for street purposes, which arose by prescription and implied dedication, is limited or restricted to "that use to which the land has been put in the most recent years." Accordingly, plaintiffs asserted that the intended pro- hibition of vehicular traffic in the 100 block of Syc- amore Street would operate as an abandonment and termination of the city's easement as the most recent use of the street has been for vehicular traffic.

The city contends that the prohibition of vehicular traffic in the 100 block of Sycamore Street will not constitute an abandonment of its easement. The city also argues that even if Sycamore Street will be closed by prohibiting vehicular traffic, nevertheless, Ga. L. 1931, p.

736, granting to the city the power to close streets, does not authorize the city to pay damages for any property right taken by the closing prior to the closing of the street. The plaintiffs' argument on this point is that the statute must be construed to be in harmony with the Constitution, Code Ann. § 2-301. This issue of the 1931 statute need not be addressed, however, as we conclude that the prohibition of vehicular traffic alone in the 100 block of Sycamore Street will not constitute an abandonment of the city's easement.

That portion of Sycamore Street lying between plaintiff Datry's store and the proposed MARTA station will be converted into a pedestrian thoroughfare. Even if the thoroughfare were to constitute a misuse of the easement, such a misuse or diversion would not work a reversion of the property, free of the easement, to the owner of the dominant fee but would only entitle plaintiffs to an injunction against the misuse of the easement. *Donalson v. Georgia Power &c. Co.,* 175 Ga. 462 (5) (165 SE 440) (1932).

Limiting the street to the use of pedestrians and emergency vehicles, however, will not be a misuse of the street easement. In *Atlanta & W. P. R. Co. v. Atlanta, B. & A. R. Co.,* 125 Ga. 529, 544 (54 SE 736) (1906), the court stated, in regard to an easement for street purposes which had arisen by implied dedication: "[b]eing implied, it follows, as a matter of course, that there are no express limitations as to the character of the use which would restrict the public from any of the legal modes of enjoyment. It goes to the public, therefore, as a public way of passage in the broadest sense." The court then went on to define a street as "a highway in a city or town used by the public for the purpose of travel, either by means of vehicles or on foot." Id. at 545. See also *Holland v. Shackelford,* 220 Ga. 104, 111 (137 SE2d 298) (1964); *Jones v. City of Moultrie,* 196 Ga. 526, 532 (27 SE2d 39) (1964); *Hancock v. Rush,* 181 Ga. 587, 600 (183 SE 554) (1936).

An implied limitation on the use of this easement for street purposes, as contended by the plaintiffs, is inconsistent with the concept of the easement as belonging to the public "as a public way of passage in the

broadest sense." Thus, "property dedicated to a public use may . . . be put to all customary uses within the definition of the use." *Franklin v. Board of Lights &c. Works,* 212 Ga. 757 (1) (95 SE2d 685) (1956); *City of Albany v. Lippitt,* 191 Ga. 756, 762 (13 SE2d 807) (1941); *Brown v. City of East Point,* 148 Ga. 85 (3) (95 SE 962) (1918). A thoroughfare for pedestrian traffic is, by definition, a street and thus, necessarily, a use within the ambit of an implied easement for public travel. Consequently, the creation of a pedestrian thoroughfare on Sycamore Street is not a misuse of the easement but rather is a permitted use. It was, therefore, error for the trial court to hold that the prohibition of vehicular traffic alone in the 100 block of Sycamore Street is sufficient to constitute an abandonment of the easement by the city.

Plaintiffs also argue that even if the exclusion of vehicular traffic from the 100 block would not in itself cause a reversion, nevertheless it will damage their right of access to their property. As elements of this damage, plaintiffs seek to include the city's intended elimination of the parking spaces and loading zones presently located in the street within the 100 block.

As an initial matter, it is necessary to distinguish between the plaintiffs' right of access to their property and their interest in the maintenance of parking spaces and loading zones in the adjoining street. The right of access, or easement of access, to a public road is a property right which arises from the ownership of land contiguous to a public road, and the landowner cannot be deprived of this right without just and adequate compensation being first paid. *Dougherty County v. Hornsby,* 213 Ga. 114, 116 (97 SE2d 300) (1957); *Barham v. Grant,* 185 Ga. 601, 604 (196 SE 43) (1938); *Howell v. Bd. of Commrs.,* 169 Ga. 74 (4) (149 SE 779) (1929); *State Hwy. Bd. v. Baxter,* 167 Ga. 124 (2) (144 SE 796) (1928). The easement consists of the right of egress from and ingress to the abutting public road and from there to the system of public roads. Cf. *Dougherty County v. Hornsby,* supra.

The use of the street itself, however, is subject to reasonable regulation and control by the state or municipality in the exercise of its police power. See *Dennis v. State,* 226 Ga. 341 (175 SE2d 17) (1970) (vehicle

weight restrictions); *City of Dalton v. Staten,* 201 Ga. 754 (1) (41 SE2d 145) (1947) (prohibition of telephones on sidewalk); *Gardner v. City of Brunswick,* 197 Ga. 167 (28 SE2d 135) (1943) (regulation of parking by means of parking meters); *Borough of Atlanta v. Kirk,* 175 Ga. 395 (165 SE 69) (1932) (prohibition of parking on certain streets during the daytime); *Howell v. Bd. of Commrs.,* supra, (regulation of use of sidewalks); *Schlesinger v. City of Atlanta,* 161 Ga. 148, 160 (129 SE 861) (1925) (prohibition of jitneys and busses on certain streets).

Plaintiffs do not challenge the authority of the City of Decatur to eliminate parking and loading spaces in the 100 block of Sycamore Street but only assert that subsumed in their right of access is the right to use the adjoining street for purposes of parking and loading. In accordance with the rationale of the above cited cases, this contention is without merit. The use of a street for parking is not included in the right of access but rather is a privilege subject to reasonable regulation by the city or state. In short, a property right to park in a city street does not exist either as an incident of the right of access or independently of that right. See *Gardner v. City of Brunswick,* supra, and also 7 McQuillin, Municipal Corporations 740, § 24.640 (1970). See also Cheek v. Floyd County, 308 FSupp. 777 (N. D. Ga. 1970); Brown v. Jackson, 268 Ore. 111 (519 P2d 87) (1974).

The exclusion of vehicular traffic from the 100 block of Sycamore Street, however, does raise a question regarding the impairment of the plaintiffs' right of ingress to and egress from their property. While a city may, consistent with its police powers, prescribe that vehicles shall not pass over certain streets (*Schlesinger v. City of Atlanta,* 161 Ga. 148, supra (dictum); 7 McQuillin, Municipal Corporations 620, 709, §§ 24.566 and 24.616 (1960). See also Gama Realty, Inc. v. City of Miami Beach, 121 S2d 183 (Fla. 1960); Simpson v. City of Los Angeles, 4 Cal. 2d 60 (47 P2d 474) (1935)), nevertheless, the exercise of this authority may occasion a compensable taking, if access to adjoining property is prevented or impaired. See *Dougherty County v. Hornsby,* 213 Ga. 114, *supra; Howell v. Bd. of Commrs.,* 169 Ga. 74, supra; and *Dougherty County v. Snelling,* 132 Ga. App. 540, 543 (208 SE2d 362)

(1974).

It is clear that the plaintiffs in this case will not be deprived of all access to their property because at least a portion of Sycamore Street, adjoining their property, will remain open as an improved pedestrian thoroughfare. Thus, the question is limited to plaintiffs' right to vehicular access to their property. The prohibition of vehicular traffic in the 100 block of Sycamore Street will clearly deprive plaintiffs of the possibility of vehicular access to their property from Sycamore Street.

"[I]nterfering with access to premises, by impeding or rendering difficult ingress or egress, is such a taking and damaging as entitle the party injured to compensation under a provision for compensation where property is damaged." *Dougherty County v. Hornsby,* supra, p. 117. The measure of damages is any diminution in the market value of the property by reason of such interference. Since it appears that the prohibition of vehicular traffic in the 100 block of Sycamore Street will cause some interference of plaintiffs' easement of access within the meaning of Art. I, Sec. III, Par. I of the Georgia Constitution (Code Ann. § 2-301), the trial court properly enjoined the city from excluding vehicular traffic in the 100 block of Sycamore Street until just and adequate compensation is first paid. *Howell v. Bd. of Commrs.,* 169 Ga. 74, 75, supra.

## II. Transit Station.

The trial court held that the MARTA transit station will be constructed on a part of the property owned by plaintiffs in fee simple and therefore constituted a taking of plaintiffs' property for which just and adequate compensation must first be paid. This holding seems to be based on the ruling of the trial court that the prohibition of vehicular traffic on Sycamore Street will constitute a closing of the street and a termination of the city's easement. If so, then the city would have no interest to convey to MARTA.

However, since we have concluded that the exclusion of motor vehicles from the 100 block of Sycamore Street will not terminate the city's easement, the question presented by the location of the transit station is whether it is a permitted use of the easement as contended by

MARTA.

The gravamen of MARTA's argument, based on such cases as *Atlanta & W. P. R. Co. v. Atlanta, B. & A. R. Co.*, 125 Ga. 529, supra; *Athens Terminal Co. v. Athens Foundry &c. Works*, 129 Ga. 393 (58 SE 891) (1907); *Southern R. Co. v. Atlanta R. &c. Co.*, 111 Ga. 679 (36 SE 873) (1900); and *County of Floyd v. Rome Street R. Co.*, 77 Ga. 614 (3 SE 3) (1887), is that since an easement by implied dedication has been interpreted in Georgia as going to the public in the broadest sense and encompassing modes of travel which were unpracticed and unknown at the time of the dedication, it follows that a subway is a permitted use of such an easement and is not an additional servitude on the underlying fee. In addition, MARTA urges that since a transit station is necessarily incident to a subway system it also falls within the parameters of the easement.

We do not agree with the latter conclusion. While an easement by implied dedication is not limited in use to a particular mode of travel, nevertheless, the primary concern in determining whether a certain use is an additional servitude is whether the street will remain open as a public way of passage. In *Atlanta & W. P. R. Co. v. Atlanta, B. & A. R. Co.*, supra, pp. 546-548, the court framed the test of an additional servitude in terms of whether the proposed use is such as to exclude from the street other permissible uses. "All streets are . . . within the police regulation of the several municipalities, but, except as controlled by that regulation, there is nothing in the nature of a street to prevent its free use as a way of passage by all people in all of the modes which are not exclusive but which are consistent with the general public use." Id. pp. 545, 546. "[One] may employ any kind of vehicle or conveyance, so long as the same does not exclude others from the enjoyment of the way. If the character of the vehicle or the method of its use be such as to introduce the idea of *exclusive use,* it will not be permitted; but if it be not such, it would be wrong to prevent it." Id. p. 547. On the basis of this analysis, commercial railroads have been held to be an additional servitude while street railways have been held not to be an additional servitude. See *Athens Terminal Co. v.*

*Athens Works &c.* supra, p. 399 (commercial railroad); *Atlanta & W. P. R. Co. v. Atlanta, B. & A. R. Co.,* supra, p. 547 (commercial railroad); *Southern R. Co. v. Atlanta R. &c. Co.,* supra (street railway); *County of Floyd v. Rome Street R. Co.,* 77 Ga. 614, supra (street railway).

This court has not previously determined whether a subway would be an additional servitude. However, courts of other states, using a standard similar to Georgia's, have held that subways do not constitute an additional servitude on a street easement. See Colonial Furniture Co. v. Cleveland Union Terminal Co., 47 Ohio App. 399 (191 NE 903) (1939); Sears v. Crocker, 184 Mass. 586 (69 NE 327) (1904). Although a subway use may be a permissible use of an easement for street purposes, it does not necessarily follow that a transit station is also permissible. While a station is a necessary appurtenance to subway travel, its status as a use of the easement must be determined by reference to its effect on the street as a way of passage. When thus considered, it is clear that the transit station structure represents a far more exclusive use than even a commercial railroad. Accordingly, we find that the MARTA transit station will be an additional servitude on the underlying fee, and the trial court properly enjoined construction of the project until adequate and just compensation is first paid to plaintiffs for the taking of their property for the transit station.

III. Consequential Damages.

As elements of the damage plaintiffs will suffer as a result of the taking of their property, the trial court found that during the process of construction of the project, "there will be such noise, dirt and debris around and heavy equipment . . . [as will] . . . substantially deprive petitioner Datry of the operation of his retail commercial business . . ." This finding was based upon information contained in a booklet, which was admitted into evidence, and which described the interference caused to businesses in San Francisco and Washington, D. C. by the construction of the rapid transit systems in those cities.

Defendants' enumeration of error as to this finding by the trial court has merit. Whatever the probative value of the experience in other cities, the information in this

booklet is insufficient to rebut the presumption that the construction project will not be done in a negligent manner. See *Central Ga. Power Co. v. Mays,* 137 Ga. 120, 124 (72 SE 900) (1911). Furthermore, defendants' contention, that such inconveniences would not be proper for consideration in a condemnation proceeding, is supported by *State Hwy. Dept. v. Hollywood Baptist Church,* 112 Ga. App. 857 (146 SE2d 570) (1965). "The evidence with respect to noise, smoke and dust being created as a result of the improvement to be placed on the property adjacent to the condemnee's remaining property related merely to the creation of such noise, smoke and dust during the period of the construction of the improvement, and there was no evidence whatsoever introduced which in any way tended to show that noise, smoke and dust would be a permanent or continuous incident of the improvement after the construction of it was completed. In order for these factors to be considered as adversely affecting the market value of the remaining property, it must be shown, among other things, that such factors are a continuous and permanent incident of the improvement . . ." Id. p. 860. Accord, *State Hwy. Dept. v. Davis,* 129 Ga. App. 142, 144 (199 SE2d 275) (1973).

If the plaintiffs suffer compensable damage to their property occasioned by the construction process, the remedy is a separate suit for damages. *Georgia Power Co. v. Jones,* 122 Ga. App. 614, 616 (178 SE2d 265) (1970). It was, therefore, error for the trial court to include noise, dirt and debris as elements of the damage plaintiffs will sustain from the taking of their property.

Since we have found that certain property rights of the plaintiffs will be taken by the exclusion of vehicular traffic from the 100 block of Sycamore Street and the construction of the MARTA transit station, that part of the order of the trial court enjoining the defendants from commencing construction on this project until just and adequate compensation is first paid for those property rights, must be affirmed.

*Judgment affirmed. All the Justices concur, except Gunter, Jordan, and Hall JJ., who dissent.*

ARGUED SEPTEMBER 9, 1975 — DECIDED OCTOBER 28, 1975 —

*Huie, Brown & Ide, W. Stell Huie, R. William Ide, III, Charles N. Pursley, Jr., Thomas O. Davis, Harvey, Willard & Elliott, Billy Olsen,* for appellants.

*Edward C. Wyatt, Steven J. Edwards, Douglas B. Warner, James M. McDaniel, Curtis R. Richardson,* for appellees.

Gunter, Justice, dissenting.

I think the trial court's judgment was erroneous and I would reverse.

The property of appellees abuts an easement in favor of the City, such easement being for the benefit of the public. The City, under its police power, has the power and authority to reasonably regulate the use of the easement by the public. Reasonable regulation of the easement by the City does not forfeit the easement and does not effect a reversion of the easement-realty to the abutting property owners.

It is therefore my view that until the City regulates the easement in an unreasonable manner so as to exceed its police power, there is no "taking" of the property of the appellees.

The termination of vehicular traffic to and from the property of the appellees abutting the easement is not a per se "taking" of the appellees' property. The City can reasonably regulate the public use of the easement under its police power, and appellees, in my opinion, have no absolute right to vehicular access across the easement to their abutting property. The termination of vehicular access to the abutting property will not in and of itself constitute a taking of the abutting property or the taking of an interest therein so long as there is reasonable access to such abutting property for the purposes for which it is being used.

Also, in my opinion, the erection of a public transit station for the use of the public in this public easement will not effect a taking of the property or any interest in the property of the appellees.

I would reverse the judgment below.

I respectfully dissent.

I am authorized to state that Justice Jordan and Justice Hall concur in this dissent.