9500.  WILLIAMS, guardian, *v.* FARMERS STATE BANK.

1. The evidence demanded a verdict for the defendant, and the court did not err in directing the verdict.

2. The legal title to bank stock purchased by and issued to W., "guardian," was prima facie in him individually, and on his death descended to his personal representative; and his successor in the trust had no right, under the facts of this case, to recover from the bank money paid for the stock.

3. In an action at law brought in behalf of wards against a bank to recover money alleged to have been paid from funds of the wards by their

deceased guardian for stock issued to him by the bank on his subscription and in his name as an individual, his declarations to others to the effect that the money invested in the stock belonged to his wards were not admissible against the defendant.

4. Where both parties to a suit introduce evidence and the case as a whole turns upon a question of law which must be decided adversely to the plaintiff, it is not error for the trial judge to direct a verdict in favor of the defendant; and the plaintiff is not entitled to complain on the ground that the court should have awarded a nonsuit, instead of directing a verdict, where no motion for nonsuit or dismissal was made by the plaintiff.

DECIDED OCTOBER 15, 1918.

Complaint; from Berrien superior court—Judge Thomas. April 14, 1917.

*Hendricks, Mills & Hendricks,* for plaintiff.

*W. R. Smith, E. K. Wilcox,* for defendant.

WADE, C. J. The bill of exceptions in this case was sued out to the Supreme Court, apparently upon the idea that the proceeding in the lower court was an equitable one. The Supreme Court transferred the case to this court, holding that the pleadings upon which the case was tried made it merely an action at law. *Williams* v. *Farmers State Bank,* 147 *Ga.* 569 (94 S. E. 998). This case, therefore, is an action at law, instituted by Mrs. Orrel Williams, as guardian of the person and property of Eloise and Juanita McLeod, minors, against the Farmers State Bank of Sparks, Georgia, to recover $500, alleged to have been invested in stocks of that bank by one. G. E. Williams, former guardian (now deceased) of the plaintiff's wards. She alleged in her petition that the defendant bank induced her deceased husband, the former guardian of her wards, to buy ten shares of its capital stock, with funds belonging to the wards, knowing at the time that the purchaser had no authority under the law to invest such trust funds in the stock of the bank; that after the purchase $600 was paid on the purchase-price of the stock, which stock was in fact worthless; that the stock was tendered back to the bank, and demand was made for the principal amount, with interest at 8 per cent. from the date of the purchase; and that she desired to sue the stockholders for the amount so received by the bank; and discovery was sought as to the list of the stockholders of the bank. It was further alleged that G. E. Williams, the former guardian, had no authority from the court of ordinary to buy the said stock; that on September 26, 1911, a certificate was issued to "G. E. Williams, gdn." In the body of the

42

certificate appears the following language: "This certifies that G. E. Williams, gdn., is the owner of ten shares of $100 each of the capital stock of Farmers State Bank, transferable only on the books of the corporation by the holder hereof in person, or by an attorney, upon the surrender of this certificate, properly endorsed."

On the trial the plaintiff tendered in evidence certified copies of letters of guardianship issued to her and to her husband, who was up to the time of his death guardian of her wards; also a certificate of stock from the Farmers State Bank to "G. E. Williams, gdn." J. C. Wilson, in behalf of the plaintiff, testified that he was cashier of the defendant bank at the time he signed the stock certificate referred to. In reference to whose money paid for the stock he testified, "I only know what the party said. I can only know what I was told about it at the time and former transactions with Mr. Williams. I got the money from Mr. Williams. . . the consideration was $600. . . When the Farmers State Bank began its organization, I solicited the stock mostly for that bank as the representative of Mr. Benton (the president). I solicited stock from G. E. Williams. The bank was not then organized. The stock had not been subscribed. I solicited Mr. Williams to subscribe for stock in this organization. . . Mr. Williams subscribed for 10 shares of stock. . . I know of no other way that the guardian money paid for this stock issued to 'G. E. Williams, gdn.,' other than stated. Mr. G. E. Williams had an account with the Farmers State Bank. I find on this book, account of G. E. Williams, personally; there is one account there of $30 on February 20th, 1912; that is the only account of G. E. Williams that I find. I don't suppose that it goes any further; that is all, the personal account. I made that entry there 'Number one,' for ten shares of stock, 'G. E. Williams, gdn., sixty per cent. paid.' That entry is correct." F. C. Adams, also sworn for plaintiff, testified that he knew G. E. Williams to be the guardian of Eloise and Juanita McLeod; that these wards received money on a life-insurance policy on the life of their mother; that the Merchants and Farmers Bank handled the insurance, and that he was, according to his recollection, vice-president of said bank at that time; that "Mr. Williams, as guardian, purchased some stock in the Farmers & Merchants Bank. The stock in the Farmers & Merchants Bank was paid for with the insurance money on the life of Mrs. McLeod. . .

I could not say positively that the money that purchased that stock in the Farmers State Bank was used to purchase the stock in the Farmers & Merchants Bank. I could not say positively of any connection of the two. . . Mr. Williams had an estate of his own. . . His estate consisted of a farm, house and lot there in Sparks. He may possibly have had some money that I did not know anything about." The plaintiff introduced three more witnesses, who testified that they knew nothing about the purchase of the stock by Williams. The defendant tendered in evidence a stock-subscription list, on which appeared "G. E. Williams, 10 shares, $1000." This concluded the evidence for both sides, and the trial judge directed a verdict for the defendant. A motion for a new trial was overruled, and the plaintiff excepted.

The case turns upon a question of law. The evidence adduced on the trial demanded a finding in favor of the defendant, and the trial judge did not err in so directing. "Where a fiduciary loans money belonging to his cestuis que trust and takes notes therefor payable to himself, though he adds the word 'guardian,' 'administrator,' or 'executor,' as the case may be, the legal title to the notes vests in him; and if he dies, the legal title descends to his personal representative, and not to his successor in the trust." *Kennedy* v. *Gelders,* 7 *Ga. App.* 241, 242 (66 S. E. 620). See also *Zellner* v. *Cleveland,* 69 *Ga.* 631; *Saffold* v. *Banks,* 69 *Ga.* 289. Section 4939 of the Civil Code provides that where an action at law is brought on a contract, it must be instituted "in the name of the party in whom the legal interest in such contract is vested." In the case under consideration the action (at law) was instituted not by the personal representative of the deceased fiduciary, but by his successor in the trust. This being the case, in order for the plaintiff to maintain the action at law, as the successor in the trust, it was incumbent upon her to show by competent evidence that the money that G. E. Williams, the former guardian, invested in the stock was the money of her wards. This the evidence failed to do, inasmuch as there was absolutely no testimony whatever that the money invested by the former guardian belonged to his wards; but to the contrary there is unchallenged documentary evidence (the stock certificate and the stock-subscription list) indicating that the stock was purchased by G. E. Williams in his individual capacity, and not in his representative capacity as guardian. It is

true that the stock certificate was issued to "G. E. Williams, gdn." However, under the statute law of this State, "an instrument signed by one as agent, trustee, guardian, administrator, executor, or the like, without more, is the individual undertaking of the maker, such words being generally words of description." Civil Code, § 3570. Since, therefore, the evidence demanded a finding that the legal title to the stock, during the lifetime of Williams, was in himself personally, and, upon his death descended to his personal representative, his successor in the trust had no legal right to bring suit in behalf of the wards to recover money paid in on the purchase of said stock. Nothing herein ruled is in conflict with the decision in the case of *Dozier* v. *McWhorter,* 117 *Ga.* 786 (45 S. E. 61), or the decisions there cited, for those were cases in which the equitable title, and not the legal title, was involved. In the *Saffold* case, supra, this distinction is expressly recognized.

Special grounds 1 to 14 inclusive raise the question whether the court erred in refusing to allow proof of declarations of the deceased guardian, G. E. Williams, to the effect that the money invested in the stock belonged to his wards. The court did not err in rejecting such testimony. The bank having dealt with Williams as an individual, the stock being subscribed for and issued to him as such, and the legal title to it being in him individually, such declarations as to ownership were not admissible in an action at law against the bank. The admissibility of declarations of this kind in an equitable proceeding to trace trust funds illegally applied by the defendant is not here involved.

The 15th and last ground of the amendment to the motion for a new trial complains that the court erred in directing a verdict for the defendant, it being contended that a nonsuit should have been granted, so that the plaintiff could recommence her suit. Conceding that the plaintiff "would have been entitled to a nonsuit upon making a motion therefor, or could have voluntarily dismissed her case without prejudice, she made no motion to that effect [so far as appears from the record], but submitted to the direction of a verdict against her; and, having allowed the verdict to be thus taken against her without moving to dismiss her case or to be permitted to take a nonsuit, she cannot now be heard to complain of the method in which her suit was disposed of. *Thompson* v. *Etowah Iron Co.,* 91 *Ga.* 538 (2) [17 S. E. 663]. See also *Grand*

*Rapids Furniture Co.* v. *Morel*, 110 *Ga.* 321 (2) [35 S. E. 312].”
*Watson* v. *Barnes*, 125 *Ga.* 733, 735 (54 S. E. 723).
　　　Judgment affirmed. *Jenkins and Luke, JJ., concur.*