34345. TAYLOR *et al.* v. GILL EQUIPMENT COMPANY.

DECIDED NOVEMBER 19, 1952—REHEARING DENIED DECEMBER 4, 1952.

*Kennedy & Bulloch,* for plaintiffs in error.

*George R. Jacob, MacDougald, Troutman, Sams & Schroder, Dan MacDougald Jr.,* contra.

GARDNER, P. J. "Where there is no conflict in the evidence, and that introduced, with all reasonable deductions or inferences therefrom, shall demand a particular verdict, the court may direct the jury to find for the party entitled thereto." Code, § 110-104. It is only where the evidence adduced demands that the jury find in favor of a certain party that it is proper to direct a verdict for such party. *Williams* v. *Farmers State Bank,* 22 *Ga. App.* 656 (97 S. E. 249). Where the evidence demands a finding that the title and right to possession of the property is in the plaintiff and admits of only one finding as to the value of the property, it is not error in a trover action to direct a verdict for the plaintiff for such amount as the uncontradicted facts show the property to be worth. *Thomasville Live Stock Co.* v. *Battle,* 145 *Ga.* 478 (89 S. E. 485). It appeared from the evidence without dispute that the defendants purchased a Diesel engine from the plaintiff company, which they retained for around five months; that this engine did not work properly, and the defendants returned it to the plaintiff; that the defendants paid $4200 for this engine; that the plaintiff did not specifically promise the defendants that it would allow them credit for this engine on a new one; that the plaintiff merely agreed to see that the defendants did not lose, and received the engine back to sell it for the defendants; that in May, 1951, the plaintiff had the defendants go to the factory for Diesel engines in Chicago, where they obtained a new engine; that the defendants received this engine with the understanding that they would send the cash therefor to the plaintiff when they returned to Junction City, Georgia, where their place of business was located; and that the defendants have failed to pay this money, but have continued to use the new engine until the instant trover action was begun.

The agreement was one for cash, and that cash was not paid. The title to the engine did not pass to the defendants, but remained in the plaintiff. The defendants were to pay cash for

the engine and get 20 percent discount from the original price. The defendants contended, however, that they intended to pay cash, but only the difference between the first engine, for which they had paid plaintiff $4200, and the new one. This was not substantiated by the evidence. The defendants never paid anything. The plaintiff contended that there was no agreement that the plaintiff was to allow the defendants credit of $4200 on the first engine. The evidence was that one of the defendants returned it to the plaintiff, stating, "I would like to have you sell this engine for me." The new one was delivered to the defendants at the factory upon the express promise that cash would be paid when the defendants returned to their place of business in Junction City, Georgia, from Chicago, Illinois, where the factory was located and, although they took the motor back with them to Georgia, the defendants never made the cash payment as agreed. The plaintiff in fact purchased the property from the factory and permitted the defendants to go to Chicago for it and get it and take it to Junction City where their place of business was located, on the condition that they would pay for it immediately upon arriving there with the engine. The defendants never complied with this condition. There was not a complete delivery of the property as against the seller, such as to vest title in the defendants. Title never passed out of the seller into the defendants.

Where goods are sold for cash to be paid on delivery, payment of the purchase price is a condition precedent to the sale; and where the purchase price is not paid, the title remains in the seller, notwithstanding the possession of the goods by the buyer. See *Gate City Coffin Co.* v. *Hall*, 33 *Ga. App.* 70 (125 S. E. 503); *Winton* v. *Butler*, 53 *Ga. App.* 696 (186 S. E. 773); *Capital Auto Co.* v. *Ward*, 54 *Ga. App.* 873 (189 S. E. 713). The fact that payment was to be made by check when the defendants reached their place of business does not alter the above rule. *Winton* v. *Butler*, supra. The fact that the defendants received this engine in Chicago, Illinois, and brought it to Junction City, Georgia, at which time they were to send the plaintiff the purchase price, does not change this principle. See *Starnes* v. *Roberts*, 128 *Ga.* 718 (58 S. E. 348).

In Harding *v.* Metz, 1 Tenn. Ch. 610, cited and quoted in

*Bergan* v. *Magnus & Co.,* 98 *Ga.* 514 (25 S. E. 570), it was stated: "If personal chattels be sold upon the express condition that they are to be paid for on delivery, and they are delivered upon the faith that the condition will be immediately performed, and performance is refused upon demand in a reasonable time, no title passes to the buyer." In the *Bergan* case the court held: "Where goods were sold for cash, to be paid for on delivery, the prepayment of the price being a condition precedent of the sale, the mere fact that the buyer obtained possession did not operate to pass the title to him, and notwithstanding such possession the title remained in the seller, the purchase money not having been paid." In *Wilson* v. *Comer,* 125 *Ga.* 500 (54 S. E. 355), the principle announced in the *Metz* case was followed and the case of *Bergan* v. *Magnus,* supra, was cited, the court saying: "Therefore, in such a transaction, trover will lie to recover the goods or their equivalent in money." See *Starnes* v. *Roberts,* supra, where two monuments were sold with the express understanding that the buyer pay for them in cash. These monuments were thus delivered to the buyer under the agreement that he was to take them and set them up in an adjoining county and when he returned to pay for them or return the monuments. In that case, which was a trover action, the court directed a verdict for the plaintiff seller, and the Supreme Court affirmed that judgment, citing the foregoing authorities. In such a situation, the contract is executory. *Gate City Coffin Co.* v. *Hall,* supra, citing *Dilman* v. *Patterson,* 2 *Ga. App.* 213 (58 S. E. 365). Furthermore, the uncontroverted evidence showed—and this appeared from the testimony of S. E. Taylor, the only defendant to testify in the case—that he was to get this Diesel engine from the factory in Chicago, Illinois, as a representative of the plaintiff company, which was a distributor of Diesel engines. He was then to proceed with this engine from Chicago to Junction City, Georgia, where the place of business of the defendants was located. Immediately upon arriving there, he was to send to the plaintiff cash in full for the engine, less 20 percent discount. The evidence was that, while the property was received under this agreement and with this understanding, the defendants never intended to pay cash as so agreed by them. "Where there has been actual fraud mixed

with deceit and corruption in an exchange of personalty, the party defrauded has his election to sue on the warranty or to bring trover for the property sold by him." *Dawson* v. *Pennaman*, 65 *Ga.* 699. In such a transaction the title to the property never passed to the buyer.

There is no merit in the contention of the defendants that there can be no cash sale under the facts in this case, and that the evidence demanded a finding that the sale was on open account and hence credit was extended and the title to the engine passed to them. This is so, defendants urge, because "delivery was made upon the promise of the defendants to pay in the future." The sale here was made and the defendants received the engine from the factory, which acted as the representative of the plaintiff distributor in so doing, upon the express understanding that this was a cash sale and that the cash would be sent immediately when the defendants arrived in Junction City with this engine, said defendants intending at the time to retain this engine, without paying the cash therefor, as agreed. To hold this to be a credit transaction under the facts would constitute a fraud on the plaintiff and permit these defendants to take advantage of their own wilful misconduct in the premises, accepting this property in Chicago as a cash sale, intending not to pay cash at the time. We have examined the foreign decisions cited in the defendants' brief, but do not find them controlling here, and it is our opinion that under the undisputed facts, as applied to the law of this State, the verdict directed was proper and was not contrary to law for any of the reasons assigned.

The defendants contend that the verdict directed is illegal and contrary to law, in that it is a verdict and judgment for the value of the property, and that the evidence as to the value was in conflict. This contention is not well founded. The evidence showed without dispute that the engine was worth $7297, the value placed thereon by the plaintiff in the trover action, and its proven value on the date of the alleged conversion. There was no evidence that the property was worth less than this sum on the date of the alleged conversion.

There was no conflict in the evidence as to the value of the new and second Diesel engine, the one involved in this trover

action. Its value at the time the defendants converted this property by accepting it with intention not to pay cash therefor, was $7297, and this was the value placed on it by the plaintiff in the petition in trover. There was no evidence that it was worth any less on that date, and under the facts the plaintiff was entitled to recover the value thereof at the time of its conversion. See Code, §§ 107-103 and 107-105. The fact that the defendants were offered a 20 percent discount does not alter the foregoing. The proven value of the Diesel engine was the cash price thereof, which was $7297, and, though the discount was offered the defendants, they did not avail themselves thereof by payment as agreed.

The verdict directed was demanded. There is no merit in the contention of the defendants that a verdict in their favor was demanded by the evidence. The evidence does not demand a finding that the transaction was changed from a cash one to an open account transaction. The evidence does not show this. It is true that the defendants at this time owed the plaintiff other items for material and for parts for the old engine, and that these were charged by the plaintiff to the defendants on open account; and, under the facts here, the mere fact that the plaintiff, in sending to the defendants a statement, had included the price of this engine does not change the contract from a cash to a credit sale. The failure of the defendants to pay the cash as agreed and the fact that they retained the engine and that the plaintiff endeavored to get them to pay the cash do not alter the sale from a cash one—in which the title to the machine would not pass until the cash was paid—to a sale on open account. The delivery of the engine to the defendants was upon their express promise to send the money as soon as the engine reached their place of business at Junction City, Georgia. The transaction was a cash one and all parties so understood, as revealed by the evidence. The evidence adduced would not have supported a verdict different from that directed, that is, a verdict in favor of the defendants on their pleadings. The evidence failed to support the contentions of the defendants. On the other hand, the unrefuted evidence demanded a finding that the title to the engine was in the plaintiff, that the transaction was a cash sale which was not completed and could not

be until the payment of the cash, which was never paid, and that the plaintiff was entitled to recover its engine, or the value thereof at the time of its receipt by the defendants in Chicago, which was $7297.

Some mention is made by counsel for the defendants that there was evidence to the effect that the contract as to the cash sale of the equipment in question was changed by a subsequent novation, thereby eliminating the cash-sale contract. We will not deal with this question extensively, but will mention it to the extent of stating that there were no defensive pleadings as to a novation; moreover, the evidence fails to show any consideration to support a novation; nor was there any other evidence to show that the defendants acted upon any representation sufficient in law to support a novation. See *Savannah Bank & Trust Co. v. Wolff*, 191 *Ga.* 111 (11 S. E. 2d, 766).

The verdict directed for the principal sum of $7297, the value of the property at the date of conversion, and interest, eo nomine, of $235 to the date of the verdict, and future interest at 7% per annum, is attacked by the defendants as being unlawful. The plaintiff, Gill Equipment Company, makes no contest with the defendants as to these items of interest, and consents that the sum be written off of the verdict. Under such a situation we will not discuss these items further, but direct that the interest items be written off, and the judgment be for the said principal sum; and it is so directed by this court.

The defendants contend that the court erred in directing the verdict for the plaintiff in that there was evidence tending to support their plea of setoff and recoupment, and that this issue should have been submitted to the jury. It did not appear that the sale of the first Diesel engine was a part of the transaction involved in the sale of the Diesel engine for which this trover action was instituted. One of the defendants testified that the old engine was delivered to the plaintiff to sell for them, and it appears that the plaintiff has said engine and is keeping it for the defendants. The plaintiff makes no claim thereto. The defendants turned it over to the plaintiff to sell. There is no merit in this connection. The evidence did not substantiate the defendants' plea and answer.

*Judgment affirmed with direction. Townsend and Carlisle, JJ., concur.*