71687. FOUNTAIN v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY.
(346 SE2d 363)

DEEN, Presiding Judge.

If Medieval theologians could detect "twenty-nine distinct damnations" in a single verse of St. Paul's Epistle to the Galatians, as recorded in the poet Browning's "Soliloquy of the Spanish Cloister,"[1] it should come as no surprise to members of another profession noted for drawing fine distinctions to receive a brief enumerating eighty (80) errors, derived from a 1,258-page trial transcript. Such is the situation in the appeal sub judice, in which Fountain, owner of a long-established but now defunct service station, appeals from the judgment in an inverse condemnation case in which a DeKalb County jury found that defendant/appellee Metropolitan Atlanta Rapid Transit Author-

---

[1] Robert Browning, *Works*. The biblical text is Galatians 3:10; cf. Deuteronomy 28:16-68. Consistently, plaintiff/appellant adduced ninety-nine exhibits at trial, of which approximately two-thirds were admitted and form a part of the record. See *Coolik v. Hawk*, 133 Ga. App. 626, 628 (212 SE2d 7) (1974), where "forty-nine" damnations were inadvertently cited rather than "twenty-nine."

ity (MARTA) had not inversely condemned appellant's business property and therefore was not liable to him in damages.

In the early 1920's appellant's father and grandfather opened a service station at the intersection of East Lake Drive (running generally north and south) and College/West Howard/DeKalb Avenue (running generally east and west).[2] East Lake Drive crossed the Georgia Railroad at a grade crossing between the two sections of the east-west artery, and the service station enjoyed a good business both from neighborhood "regulars" and from the hordes of transients who daily commuted to and from work on these two main routes between the Decatur/DeKalb County/Druid Hills area and various sites in downtown Atlanta. In 1959 appellant (who had succeeded his grandfather in the business) and his father moved the station across the tracks from the original, now somewhat confined, location on the southeast corner of the intersection, to the northeast corner, where there was sufficient space to erect a larger and more modern facility, plus room for possible expansion. Business continued to be brisk into the early 1970's, at which time preliminary work on the east-west MARTA line was commenced. There is some evidence of record indicating that in the original MARTA plans the East Lake Drive crossing was to be retained (although in modified form: as an underpass rather than at grade) and the existing street was to remain a thoroughfare traversing the railroad and MARTA tracks. Appellant alleges that this was affirmatively represented to him by a MARTA official, and that in fact he learned of the plans to close the crossing and reroute East Lake Drive (as was ultimately done) only incidentally, after it was too late financially for him to take steps to modify his business arrangements.

In 1976 MARTA condemned an unused area of appellant's property for a retention pond to accommodate an anticipated increase in drainage to be caused by MARTA construction. During the litigation attendant upon that condemnation, appellant Fountain testified that the taking of this portion of his property would cause a decline in profits, since he had planned to expand his station so as to include self-service facilities, and that the condemned property was needed for the projected updating and expansion. Fountain was compensated for this taking in an amount not disclosed in the record of the case at bar.[3] See *Fountain v. DeKalb County*, 238 Ga. 14 (231 SE2d 49) (1976); *Fountain v. MARTA*, 147 Ga. App. 465 (249 SE2d 296) (1978); *Fountain v. DeKalb County*, 154 Ga. App. 302 (267 SE2d 903) (1980).

---

[2] In that section of the Atlanta/Decatur area, there is in most places a street on both sides of the railroad tracks, each side having its own separate name. Moreover, the name on each side changes several times between downtown Atlanta and the Decatur/Avondale area.

[3] There was considerable contention at the trial of the instant case as to how much, if any, testimony regarding the prior litigation was admissible.

During the course of the construction of the MARTA line, access to appellant's property was at various times interfered with and diminished in that one or more of the several entrances to his station (but apparently never all at once) was blocked by contractors' equipment or construction materials or by construction activity. Ultimately, East Lake Drive was rerouted so that appellant's property, which formerly sat astride the "going to work" corner (i.e., on the right side of both intersecting streets for Atlanta-bound motorists) where two main arteries intersected, ended up as the sole property fronting on a dead-end spur off the new East Lake Drive. Business declined rather steadily during the more than three years of construction activity, and in March 1978 appellant closed his station. He has subsequently installed a truck rental facility on the premises, and the stub of the formerly busy thoroughfare, in addition to providing ingress and egress for persons seeking to rent trucks, now serves *de facto* as a free parking lot. According to appellant's testimony, income from the present use of the property is far below that derived from its use as a service station.

In January 1981 Fountain filed simultaneous actions against MARTA in the Superior Court of Fulton County and the U. S. District Court for the Northern District of Georgia, alleging violations of rights guaranteed under state and federal constitutions and laws. In June 1981 the case was ordered placed on the superior court's inactive calendar for six months pending the decision of the federal courts. The Eleventh Circuit found that appellant stated a federal claim for the denial of an economically viable use of the property without payment of just compensation, but directed the District Court to abstain while the superior court, in the exercise of its concurrent jurisdiction, made its determination. *Fountain v. MARTA*, 678 F2d 1038 (11th Cir. 1982).

At the close of the evidence in the state action, appellant unsuccessfully moved for a directed verdict on the issue of liability. A jury returned a verdict in favor of defendant/appellee MARTA. After denial of his motions for judgment notwithstanding the verdict and for a new trial, Fountain appealed to the Supreme Court, which transferred the appeal to this court. *Held*:

1. Appellant contends in the first of his eighty enumerations of error that the trial court erred in denying his motion for a directed verdict on the issue of liability — i.e., whether or not a compensable taking occurred. For the reasons set forth in the following paragraphs, we agree with appellant that denial of his motion was error.

"If there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." OCGA § 9-11-50 (a). A directed verdict is improper where

the evidence strongly supports but does not demand a certain verdict, *Ranger Constr. Co. v. Robertshaw Controls Co.*, 166 Ga. App. 679 (305 SE2d 361) (1983), or where there is a reasonable inference supported by evidence which would authorize a verdict to the contrary. *Findley v. McDaniel*, 158 Ga. App. 445 (280 SE2d 858) (1981). Direction of a verdict is proper "only where there is no conflict in the evidence as to any material issue and the evidence introduced together with all reasonable deductions or inferences therefrom demands a particular verdict." *Carver v. Jones*, 166 Ga. App. 197 (303 SE2d 529) (1983). The mere existence of conflicts in the evidence adduced does not preclude a directed verdict, however, if the conflicts relate to matters immaterial to the issue or issues on which the directed verdict is sought. *Berger v. Ga. Power Co.*, 77 Ga. App. 672 (49 SE2d 668) (1948). Where the evidence demands that a jury find in favor of a certain party, it is proper to direct a verdict. *Taylor v. Gill Equip. Co.*, 87 Ga. App. 309 (73 SE2d 755) (1952).

"Except as otherwise provided in this paragraph, private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." Const. of Ga., Art. I, Sec. III, Par. I (a). "Except in cases of extreme necessity and great urgency, the right of eminent domain cannot be exercised without first providing for just compensation to the owner for the interference with his exclusive rights." OCGA § 22-1-5. A compensable taking is not confined to the taking of the entire fee, nor does it necessarily consist of a physical invasion of the property. *Dougherty County v. Hornsby*, 213 Ga. 114 (97 SE2d 300) (1957). The taking of any property interest, including, *inter alia*, the easement of access to a public road or street upon which the property abuts — that is, the right of ingress and egress — may constitute such a taking as is contemplated by relevant constitutional provisions and statutory law. *Metropolitan Atlanta Rapid Transit Auth. v. Datry*, 235 Ga. 568 (220 SE2d 905) (1975); *State Hwy. Dept. v. Lumpkin*, 222 Ga. 727 (152 SE2d 557) (1966).

In order to be compensable, however, the injury resulting from the taking must be peculiar to the complaining owner or occupant, as distinguished from that experienced by the general public; if the plaintiff's injury is merely greater in degree than that of the general public but is of the same kind, then his injury is not compensable. *Dougherty County v. Hornsby*, supra. The owner of property abutting upon a public road has rights of ingress and egress which do not belong to the public generally. *State Hwy. Dept. v. Lumpkin*, supra. The owner of land abutting on the public road is not *per se* entitled, as against the public, to access to his land at *all* points on the boundary between the property and the road. When his easement of access has been interfered with, however, he must be offered a *convenient*

access to his property and the improvements thereon, and his means of ingress and egress must not be *substantially* interfered with. *Johnson v. Burke County*, 101 Ga. App. 747 (115 SE2d 484) (1960). This court has held that even the property owner whose property did not directly abut on the changed or rerouted street but was within the same block would be entitled to compensation if a usual, direct, and immediate means of access thereto or egress therefrom were materially impaired or done away with. *City of Atlanta v. Dinkins*, 46 Ga. App. 19 (166 SE 429) (1932).

OCGA § 22-2-1 et seq. provides the proper procedure for the taking of private property through condemnation, or the exercise of eminent domain. "If the public authority does not proceed directly to condemn, [however,] the injured citizen, nonetheless has a right to compensation under the state constitution. A cause of action will lie. The measure of damages has been established by the cases. [Cits.] Such an action has been called an 'inverse condemnation' action." *Powell v. Ledbetter Bros.*, 251 Ga. 649, 650 (307 SE2d 663) (1983). See also *Fulton County v. Baranan*, 240 Ga. 837 (242 SE2d 617) (1978); *Downside Risk v. MARTA*, 156 Ga. App. 209 (274 SE2d 653) (1980).

In *Dept. of Transp. v. Whitehead*, 253 Ga. 150 (317 SE2d 542) (1984), DOT condemned the entire frontage of the two converging arterial streets on which Whitehead's property faced. He was left his existing direct vehicular access to a third street which connected the two converging streets and off which he maintained a driveway and parking lot; but one end of this connecting street was closed by the condemnor, thereby preventing indirect vehicular access onto one of the arterial streets via this third street. His pedestrian access to the converging arterial streets was not disturbed, but he lost his right to place a driveway in front of his property so as to provide direct vehicular access to these two converging streets. The trial court admitted evidence on inconvenient and circuitous travel necessitated by the loss of access to the two main streets, and the court charged the jury that appellant Whitehead could recover for interference with access. The jury awarded a sizable sum in damages, and the judgment of the trial court was affirmed both by this court and by the Supreme Court.

In stating the basis for its decision, the Supreme Court quoted *MARTA v. Datry*, 235 Ga. 568, 575, supra: "The right of access, or easement of access to a public road is a property right which arises from the ownership of land contiguous to a public road, and the landowner cannot be deprived of this right without just and adequate compensation being first paid . . . The easement consists of the right of egress from and ingress to the abutting public road and from there to the system of public roads." The court continued at 152: "Thus the DOT deprived Whitehead of his easement of access onto the abutting

Peachtree/West Peachtree Street, and must compensate him for the taking, irrespective of Whitehead's easement of access onto the abutting 19th Street . . . However, the jury should consider whether the owner has any alternative access, such as 19th Street, in the instant case, when it determines the amount of damages . . . to the owner due to the deprivation of one means of access to this property." Id. The court held further: "DOT was required to compensate Whitehead for his deprivation of access in a manner which took cognizance of the inconvenience and circuity of travel created thereby in reaching his remaining property. First, any such inconvenience is clearly a consideration affecting the value of Whitehead's remaining property. [Cits.] Second, because Whitehead's damage resulting from any such inconvenience is based upon the elimination of his easement of access, his damage is special and not the same as that suffered by the public in general." Id. The court went on to point out, at 153, that the evidence adduced by Whitehead regarding changes in the traffic pattern, "which are changes suffered by the general public," was proffered not in an attempt to claim damages for those changes, but because "evidence of these changes was the framework of the evidence of the inconvenience 'to those attempting to use the remaining property *resulting from the proposed construction.*'" The court distinguished *Dept. of Transp. v. Katz*, 169 Ga. App. 310 (312 SE2d 635) (1983); *State Hwy. Dept. v. Cantrell*, 119 Ga. App. 241 (166 SE2d 604) (1969), and *Tift County v. Smith*, 219 Ga. 68 (131 SE2d 527) (1963), on the ground that in none of these three cases was there a taking of an easement of access, "and the damage the condemnees sought to recover for inconvenience and circuity of travel was thus not a damage special to them." Id.

Except for the fact that the condemnation procedure was utilized in *Whitehead* and not in the instant case, *Whitehead* is precisely on point with the case *sub judice.* Under the statutory and case law cited supra, MARTA's actions with reference to appellant's property clearly constituted a taking, and the jury should have been instructed, pursuant to OCGA § 9-11-50 (a), that the court was directing a verdict for appellant on the issue of liability. The trial transcript makes it plain that the court was well aware of the appositeness of *Whitehead* to the case at bar and relied on *Whitehead* as he ruled on the evidence proffered at trial. The transcript further reveals, however, that the court erred at one particular point in his reading of *Whitehead*. In response to appellant's motion for a directed verdict the court remarked: "Well, the Whitehead case covers this question . . . This is a jury question. And if the jury finds that there was not any testimony that . . . they [MARTA] interfered with [access], he can recover for all the things that Katz [*DOT v. Katz*, supra] said he couldn't . . . But [Whitehead] said the jury should consider any alter-

native access that he has. In other words, if one thing has stopped it, the jury ought to consider whether he has got the other two accesses open." It is apparent from a comparison of the trial court's language with that quoted from *Whitehead,* supra at 152, that in reading "[T]he jury should consider whether the owner has any alternative access," the court overlooked the qualifying adverbial phrase, *"when it determines the amount of damages."* (Emphasis supplied.) The trial court thus obviously relied on *Whitehead* for a proposition which that case does not affirmatively stand for; in other words, *Whitehead* does not mandate that the question of whether a taking occurred *vel non* be resolved by the jury alone in all cases when there is not total deprivation of access to the public road. Rather, *Whitehead* requires that, the *factum* of the taking having been established, the degree and feasibility of any remaining access be taken into account when the amount of pecuniary damages is assessed.

We are persuaded that the evidence in the instant case meets the criteria of OCGA § 9-11-50 (a), and that the trial court erred in denying appellant's motion for a directed verdict on the issue of liability. We therefore reverse the judgment below and remand the case for retrial of the issue of damages.

2. Having determined in Division 1, supra, that the trial court committed reversible error, we do not address appellant's remaining enumerations.

*Judgment reversed. Benham, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I believe it important to point out that it is because of the facts in this case that liability was established and a directed verdict thereon was demanded. The undisputed facts showed that Fountain's property right, his easement of access, had been *substantially* interfered with and the *convenience* of access negatively affected to a degree which constituted a compensable taking as a matter of law. This is the test of determining whether there has been a taking, set out in *State Hwy. Bd. v. Baxter,* 167 Ga. 124 (144 SE 796) (1928) and applied in *Johnson v. Burke County,* 101 Ga. App. 747, 749 (115 SE2d 484) (1960), which the majority has cited for this proposition. The "substantial" language was carried forward in *Homeyer v. State Hwy. Dept.,* 112 Ga. App. 462, 464 (145 SE2d 613) (1965). So in some cases the question of whether the taking was compensable in the first place would be a question for the jury.

That is what the trial court may have had in mind here when it construed *Dept. of Transp. v. Whitehead,* 253 Ga. 150 (317 SE2d 542) (1984) to make liability a jury question. *Whitehead,* however, does not deal with the question of liability *vel non,* but rather with

the issue of damages, the elements and evidence related thereto. There the Supreme Court assumed a compensable taking, for it stated that "he will lose the right to place a driveway in front of his property on Peachtree/West Peachtree Street" even though the property owner was not actually using that portion of the easement at that time.

The point is, not every interference with access is a compensable taking. It is such if the interference "impedes" ("substantially interferes with") or "render(s) difficult ingress or egress". *Johnson*, supra at 749. Even where the evidence conclusively establishes it so as not to require the determination by a jury, as here, the evidence of the degree of inconvenience and circuity of travel are also relevant to the issue of the amount of damages. That is the lesson of *Whitehead*.

DECIDED MAY 21, 1986 —
REHEARING DENIED JUNE 9, 1986 —

*George P. Dillard*, for appellant.
*Barclay T. Macon, John E. Ramsey*, for appellee.