### A89A0476. STOLZ v. SHULMAN.
(383 SE2d 559)

BEASLEY, Judge.

Defendant Stolz appeals from the judgment entered on a jury's verdict and from the denial of his motion for new trial. The dispute between attorney Stolz and his former partner Warren Shulman resulted from the ending of their partnership and the later receipt by Stolz of contingency fees totaling $1,405,063.83 (net) primarily from the recovery in a tort case reported at *Ford Motor Co. v. Stubblefield,* 171 Ga. App. 331 (319 SE2d 470) (1984), and two other cases. Shulman contends he is entitled to 20 percent of those fees.

Stolz, a former judge on this court, met Shulman through his father, Arnold Shulman, who had also served on this court. In June of 1979 they formed Stolz & Shulman, a general partnership for the practice of law. The agreement forming the partnership was oral and was that there would be an equal division of profits and expenses. They would put into the partnership all of their pending cases. The intent was that Shulman, because of his extensive business contacts, would bring in the business which Stolz would primarily service. At the time the partnership was originally formed, Stolz brought into the partnership two cases. One was *Stubblefield* and involved wrongful death as a result of a Ford Pinto accident.

The partners practiced as agreed until January 1981 when Loveless joined the firm as a partner and the firm became Stolz, Shulman & Loveless, the predecessor firm thereby dissolving. *Harwell v. Cowan,* 175 Ga. 33 (1) (165 SE 19) (1932); *Stone v. First Nat. Bank &c.,* 117 Ga. App. 802, 803 (3) (162 SE2d 217) (1968); see former OCGA §§ 14-8-24 & 14-8-90.[1] Loveless and Stolz stated that this partnership operated as had the predecessor, i.e., everything went into the pot and all, including the liabilities, was shared one-third each. The only disagreement voiced by Shulman was a statement made in his affidavit on summary judgment motions that the contingency fee cases of Stolz and Shulman (fees at issue) did not go into the new

---

[1] All of the events at issue occurred prior to the effective date of the Uniform Partnership Act, Ga. L. 1984, p. 1439 et seq.

partnership pot. During 1981, Shulman ran for Mayor of Atlanta with the approval of Stolz and Loveless. In June 1981, Loveless left the firm and agreed with Stolz and Shulman that he would leave with what he brought and they would assume all of the debts and all of the assets of the remaining firm. Stolz and Shulman reformed the firm pursuant to their original oral understanding.

In November 1982 Shulman decided to leave the practice of law and devote his full attention to his business interests. Shulman acknowledged that he did no work on the two contingency cases which Stolz brought in and that the one contingency case which Shulman brought in was primarily worked on by Stolz or associates in the firm. His contention is that while he was a partner he was entitled to 50 percent of the profits from any such case but that when he left the firm, he gave up 30 percent out of a sense of fairness and a verbal agreement that Shulman would leave all cases and all his business contacts in return for 20 percent of the profits.

Stolz acknowledged that there was an oral agreement ending the firm but disagreed as to its terms. Although he acknowledged that he agreed to buy certain fixtures and physical assets from Shulman and to pay him his portion of outstanding receivables, Stolz said the remainder of the agreement was that he would assume all outstanding liabilities and retain all outstanding assets of the firm, and that there was no discussion of and no agreement as to "contingent fees" as a category separate from "assets" or "liabilities."

1. The first enumeration objects to the giving of Shulman's Request to Charge 22, which dealt with the tax consequences if Stolz should have to pay a portion of the fees to Shulman, Stolz already having paid income tax on the full amount.

A portion of the argument presented here is premised on "plaintiff's claim for an accounting." Although such a claim was added to the complaint by plaintiff's second amendment, it was deleted by the third amendment and was not involved in the trial of the case.

We must first consider how the evidence to which the requested charge related entered the case. During the opening statement for defendant Stolz, counsel said: "I'm going to ask Mr. Stolz . . . to tell you what went with that money. And you will see he's not a greedy man or a selfish man. . . . [H]e shared that fee with people who worked on it. . . . [I]f he thought he had owed this man any part of that, he surely would have paid it to him because otherwise that money would have gone to Uncle Sam, in taxes. And we'll show . . . that he paid an enormous amount of it out to the IRS . . . ." No reference to this type of evidence had been made during plaintiff's opening statement.

During cross-examination of plaintiff, defendant asked about his business interests. Plaintiff objected on the ground that the present

financial conditions of the parties (i.e., Shulman's financial need for money and Stolz' ability to pay it) were "absolutely irrelevant" and the court sustained this objection.

Calling Stolz for purposes of cross-examination during plaintiff's case in chief, plaintiff asked Stolz if any bonuses were paid to the people who had actually worked on the *Stubblefield* case and about expenses incurred on it. No objection was made, apparently due to Stolz' intention to introduce evidence of the taxes he paid on the recovery, which evidence he presented during his direct examination. In fact he explained where all of the fee went, including the purchase of cars, a house, and a European vacation.

Prior to Stolz' explanation, the jury was excused, a proffer was made of the evidence because of Shulman's objection as to relevancy. Stolz argued that the evidence did not go to present financial condition and did not prejudice either side but instead showed Stolz' state of mind vis-a-vis his understanding of the terms of the agreement with regard to contingent fees. Shulman argued that the expenses relating to the lawsuit and the bonuses paid to the employees by Stolz were relevant to Shulman's claim for 50 percent of the net proceeds, to which he would have been entitled under the original partnership agreement unless it had been modified by the dissolution agreement.

Shulman did agree that the tax information could be admitted with the jury instruction contained in Request 22, which was needed to avoid the jury's thinking that Stolz would be forced to pay the same money twice, once to the IRS and again to Shulman. The court allowed the evidence because there had been repeated references to the expenses of running the partnership as well as to the disposition of the fee proceeds. It specifically held that the evidence did not relate to the present worldly circumstances of the parties.

Stolz' objection to the giving of the charge was that it was "highly improper and highly prejudicial to the defendant in allowing the jury to consider the affect [sic] of income taxes or the refund of income taxes, and inferred to the jury that quite frankly it would be a lot easier to give the plaintiff some money if they thought that Mr. Stolz could get some of that money back from the IRS."

The charge was a correct statement of federal tax principles. 26 USC § 1341. The primary authority cited in support of defendant's contention that it was error to give it is *Atlantic Coast Line R. Co. v. Brown*, 93 Ga. App. 805 (92 SE2d 874) (1956). This is the initial case in which it was held not error to fail to charge upon request that a recovery in a personal injury suit would not be taxable to plaintiff. The court reasoned that it is of no concern to a jury what tax might have to be paid from any sum awarded.

That was not the situation here, since defendant urged the relevancy of the tax payment as going to his state of mind with regard to

his understanding of the agreement concerning contingent fees. The court's instruction merely negated what would have been prejudice to plaintiff, who vehemently objected to the tax information's admissibility. The court fully instructed the jury that its task was to determine what the parties to the agreement had intended with respect to contingency fees. Then the objected-to instruction was given. Not to have given it would have allowed the jury to conclude that if the agreement was that Shulman was entitled to the money, Stolz would have to pay it twice. Such is not the law and the court's instruction was not error.

Defendant may not complain of an instruction explaining the legal consequence of evidence which he insisted was admissible. *Pegg v. State*, 183 Ga. App. 668 (2) (359 SE2d 678) (1987); *Farmer v. State*, 180 Ga. App. 720, 722 (5) (350 SE2d 583) (1986); *Herron v. MARTA*, 177 Ga. App. 201, 202 (1) (338 SE2d 777) (1985); see *Augusta Tennis Club v. Leger*, 186 Ga. App. 440, 441 (1) (367 SE2d 263) (1988).

2. Addressing enumerations 3, 4 & 5 together as presented by appellant, they contend that the trial court erred in directing a partial verdict as to the existence of an agreement, the terms of which were in dispute, as opposed to leaving the question of a contract *vel non* to the jury and that it further erred in not giving requested jury instructions on the issue of the elements of a contract. Former OCGA § 14-8-90 provided: "[e]very partnership is dissolved at any time by the mutual consent of the partners; . . . ."

At the close of the plaintiff's case and again at the close of all the evidence, Stolz moved for an "involuntary dismissal" of plaintiff's case. It was properly treated as a motion for directed verdict pursuant to OCGA § 9-11-50 (a). The only ground at issue here is that relating to the 20 percent claim. The court granted Stolz' motion as to the claim for 50 percent of the fees, concluding that there had been an agreement to dissolve the firm but thereafter disagreement as to the term regarding contingency fees. As stated by the court during final argument on the motion: "What I'm hearing here, when you take out everything except the bare essentials of it, is a dispute about what the terms of a contract are . . . . and if I'm wrong, y'all tell me now. Because that's the premise upon which I'm basing everything that I . . . do in this case. . . . [T]hese gentlemen got together, dissolved their partnership effective on November 1st, along agreed contract lines . . . . Two different contentions about a contract that neither one denies exists. It's what was in it and what wasn't."

Counsel for Stolz stated during argument on his motion: "[O]ur contention is they did have an oral agreement . . . . The problem here is that both of these parties agreed that whatever their agreement, it has been entirely satisfied except for this one little thing, whether the twenty percent was agreed on as a contingent fee or

whether it wasn't. . . . [A]nd the evidence is there was an agreement, you're right." Compare *Jackson v. Easters*, 190 Ga. App 713 (379 SE2d 610) (1989).

In ruling, the court stated: "But it's absolutely clear here that both sides are contending that there's an agreement . . . . There is an agreement. Question is, what were the terms of that agreement with respect to contingent fee cases."

Stolz raised no objection to this aspect of the court's ruling at the time it was made, nor did he object to the court's submission of the issue to the jury, as framed by the granting of his motion. One may not acquiesce in the actions of the trial court, particularly those done as the result of one's own actions and then complain for the first time on appeal. *Hall v. State*, 189 Ga. App. 267, 268 (2) (375 SE2d 50) (1988); *Pegg*, supra; *Farmer*, supra.

Stolz further objects to the court's failure to give the requested charges. Request 14 was a general instruction regarding the elements necessary to find the existence of a contract. Since it was not disputed that a contract existed, this charge was neither adjusted to the evidence nor necessary and the failure to give it was not error. *Medoc Corp. v. Keel*, 166 Ga. App. 615, 618 (2) (305 SE2d 134) (1983); see *Georgia Kraft Co. &c. v. Laborers' Intl. Union &c.*, 170 Ga. App. 581, 585 (317 SE2d 602) (1984).

The failure to give Request 28 dealing with DR 2-107 of the State Bar, 252 Ga. 598, is enumerated as error but is not briefed and is deemed abandoned. Rule 15 (c); *Augusta Tennis Club*, supra at 442 (3).

3. In his second enumeration, Stolz complains of the court's failure to give his Request 7, taken from *Chambers v. C & S Nat. Bank*, 242 Ga. 498 (249 SE2d 214) (1978), that if a party is intentionally self-contradictory, the jury should take against him that version most unfavorable to him.

During discovery, Stolz had obtained from Shulman copies of financial statements submitted by Shulman to his bank. The copy presented to Stolz dated July 1, 1982 reflects a contingent asset of $330,000, representing 20 percent of the fee on a $12.5 million dollar judgment, the *Stubblefield* fee. During the deposition, Shulman was asked to examine all of the statements as one exhibit. He was asked if he had added anything to those statements since the dates shown on them. He answered "no." During trial, when questioned specifically about the 1982 statement which was dated prior to the *Stubblefield* trial, he testified that he had handwritten in the contingent fee on his 1982 statement to use it in preparation of his 1983 statement, which would have been typed from it. He said that he misspoke when, during his deposition, he said nothing had been added after the date of the 1982 statement.

The argument made by Stolz was that Shulman had falsified these statements to reflect the fee in order to bolster his claim. In rebuttal, Shulman presented a bank officer who brought the originals of the statements. The fee was not reflected on the 1982 statement but was on those for the following years. The court gave the charge on credibility contained in the Suggested Pattern Jury Instructions for Civil Cases. In objecting to the charge, defendant argued that Request 7 was a correct statement of the law and suited to the evidence. It is true that it is a correct statement of the law. *Weathers v. Cowan*, 176 Ga. App. 19, 21 (2) (335 SE2d 392) (1985); see *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (343 SE2d 680) (1986). But such a charge is appropriate only where the party is the sole witness testifying in his behalf and the contradictory testimony must be "testimony presented by the party on the trial of the case and not testimony adduced at some other time and place which is introduced on the trial merely for the purposes of impeachment." *Branan v. LaGrange Truck Lines*, 94 Ga. App. 829 (3) (96 SE2d 364) (1956); *Trout v. Harrison*, 188 Ga. App. 246, 248 (3) (372 SE2d 651) (1988); *Slaton Machine v. Owens-Illinois*, 138 Ga. App. 80, 82 (3) (225 SE2d 473) (1976).

Neither criterion obtains here and its omission was not error.

4. Defendant's sixth and eighth enumerations argue that the court's failure to charge his Requests 18 and 25 was error. Request 18 was couched in terms of OCGA § 10-6-31, dealing with principal and agent. Stolz argues that the charge was appropriate on the basis that Shulman "abandoned" the partnership and the *Stubblefield* case and therefore was not entitled to his "commission" because he violated his "engagement" as reflected in the substitution of counsel filed in *Stubblefield*, showing the firm of Stolz & Shulman as attorneys.

First, there is no evidence to show that Shulman, personally, as opposed to the firm, was ever designated as the Stubblefields' agent. The only contact he had with the case was due to his and Stolz' agreement to put all their cases into the firm on the two occasions when Stolz & Shulman formed. Second, Stolz' own evidence was that Shulman had nothing to do with the case and that he had never been asked to do anything on the case. This is unlike *Denver v. Roane*, 99 U. S. 355 (25 LE 476) (1878), relied on by defendant, where a partner withdrew personally from a case, told his partners he would have nothing to do with it and considered it a fraud, and disparaged the case to one of the judges on the court where it was pending. The provisions of OCGA § 10-6-31 would come into play only if the Stubblefields contended that the terms of the "engagement" were violated. There is no evidence that they ever so claimed or that they were in any way displeased with the services of Stolz & Shulman. Third, Stolz' own evidence was that the partnership was dissolved by agree-

ment as provided by OCGA § 14-8-90, not that Shulman "abandoned" the practice.

OCGA § 10-6-31 was not required to be charged. *Jones v. State*, 188 Ga. App. 240, 241 (2) (372 SE2d 828) (1988).

Request 25, based on *Denver*, supra, dealt with the duties owed by partners to each other and to clients. This charge was not appropriate, as there was no evidence from Stolz that he considered the acts of Shulman as an abandonment, although there was some argument presented by counsel on this ground. The evidence showed a dissolution by mutual consent and such a charge was not warranted.

5. Enumeration 7 claims error in the rejection of Request 23, dealing with the nature of a contingent fee and that, as between attorney and client, the attorney has no right to recover a fee until the case is finalized. The argument is that the charge is an accurate legal statement and would have allowed the jury "to infer exactly what Mr. Stolz was bargaining with at the time the plaintiff left the firm." This apparently means that the contingent fee cases had to be "liabilities" since they had not ripened and therefore Stolz was bargaining with nothing. This argument, however, contradicts Stolz' testimony that "when Warren left the practice he left me with all the assets and with all the liabilities. And one of the assets were [sic] the contingent fee cases."

Failure to give the charge was not error.

6. Defendant enumerates as error the denial of his motions for directed verdict, j.n.o.v., and new trial.

At the close of plaintiff's case, the motion made with regard to the 20 percent claim was that if there were no agreement regarding his withdrawal from the firm, then Shulman's actions were in violation of DR 2-107 of the Code of Professional Conduct and he could not share in the fees without complying with the requirements of that rule. The contention then was that an oral agreement would not satisfy the rule's requirement of an "agreement," but that it had to be written in order to avoid complying with DR 2-107's fee splitting criteria.

At the close of all evidence, defendant renewed his previous motion and added as grounds that Shulman's abandonment of his contract obligations to his clients was merely an agreement to breach these obligations, was illegal and could not form the basis for a binding contract. This is not supported by Stolz' own evidence, particularly viewed in a light favorable to Shulman, as was required in considering the motion for directed verdict. OCGA § 9-11-50 (a); *Fountain v. MARTA*, 179 Ga. App. 318, 320 (1) (346 SE2d 363) (1986), rev'd on other grounds, 256 Ga. 732 (352 SE2d 781) (1987). Stolz considered all pending cases of the firm as assets on which he and the other employees of the firm would continue to work. He did

not dispute that clients brought in by Shulman remained with the firm after Shulman left and there was no evidence of any client contending that he had been abandoned. Stolz urged at every opportunity that he and the associates of the firm were the ones performing the "lawyering" for clients who were brought in mainly by Shulman's "rainmaking." Denial of the motion on this ground was not error.

Defendant also argued the Statute of Frauds as a basis for directed verdict. This ground is considered with that set out above concerning DR 2-107, because defendant cited no authority below or here requiring that a dissolution agreement between attorneys be in writing except for the statute of frauds, applicable to all contracts. OCGA § 13-5-30. Shulman's contention is that the agreement had been taken out of the statute because it could have been performed in one year and it was partially performed by both sides so as to remove it from the statute. OCGA § 13-5-31; *Vitner v. Funk*, 182 Ga. App. 39, 43 (2) (354 SE2d 666) (1987). Whether the agreement fell within such an exclusion was for the jury. *Allen & Bean v. American &c. Ins. Co.*, 153 Ga. App. 617, 619 (266 SE2d 295) (1980).

Denial of the motions for directed verdict and j.n.o.v. was not error. OCGA § 9-11-50 (a); *Vitner*, supra.

7. The eleventh enumeration seeks review of the denial of defendant's motion for summary judgment, which is moot. *Estes v. Jack Eckerd Corp.*, 184 Ga. App. 98, 102 (4) (360 SE2d 649) (1987), citing *Hardaway Constructors v. Browning*, 176 Ga. App. 530 (2) (336 SE2d 579) (1985).

8. Finally, defendant asserts here that the trial judge was not qualified to rule on the motion for new trial, having qualified in the election for superior court judge. This was never presented to the trial court for consideration and ruling. Although defendant alludes to the motion for supersedeas bond as the occasion when it was presented, neither the record nor the transcript reflect it even though supplementation was allowed. It will not be considered here for the first time. *Pulliam v. State*, 236 Ga. 460, 465 (224 SE2d 8) (1976).

*Judgment affirmed. Benham, Acting P. J., and Judge Robert G. Walther, concur. Carley, C. J., and McMurray, P. J., disqualified.*

DECIDED MAY 2, 1989 —
REHEARING DENIED JUNE 9, 1989 — 

*Alston & Bird, G. Conley Ingram, Richard T. Fulton, Seaton D. Purdom*, for appellant.

*Troutman, Sanders, Lockerman & Ashmore, Daniel S. Reinhardt, Anne G. McGlamry*, for appellee.