S07A1016. CITY OF ATLANTA v. SIG SAMUELS LAUNDRY AND DRY CLEANING.
(652 SE2d 533)

MELTON, Justice.

The City of Atlanta ("City") appeals from an order of the Superior Court of Fulton County which required the City to, among other things, compensate Sig Samuels Laundry and Dry Cleaning ("Sig Samuels") for a purported taking of Sig Samuels' property in connection with the installation of a sidewalk on the City's own right-of-way. For the reasons that follow, we reverse.

Sig Samuels is a laundry and dry cleaning company located at the intersection of Monroe Drive and Eighth Street in the City of Atlanta. The primary parking at Sig Samuels is a parking pad on Monroe Drive, directly in front of the building and within the City's right-of-way. The Commissioner of the Department of Public Works contacted Sig Samuels on or about 4:00 p.m. on Friday, August 4, 2006, to inform Sig Samuels that the Department would install a sidewalk on the City's right-of-way the following day. Sig Samuels immediately moved for an injunction to prevent the installation, which the Fulton County Superior Court granted on a temporary basis late Friday afternoon.

After a hearing to determine whether the injunction would become permanent, the Superior Court, acknowledging that the sidewalk installation would be a "public project being [done] on government land," declined to enjoin the City from installing the sidewalk on its own right-of-way. However, the court also found "that Sig Samuels should be compensated for [the City's] taking by the installation of the sidewalk, . . . and the measure of damages is any diminution in the market value of the property by reason of such interference." The court also ordered the City to make available two

additional parking spaces on Eighth Street and extended the preliminary injunction then in place for an additional ninety days so that the parties could "pursue other just and reasonable measures." Finally, the court ordered the City to install signs concerning the flow of traffic for the same 90-day period that the extended preliminary injunction would be in place.

1. Pursuant to Art. I, Sec. III, Par. I (a) of the Georgia Constitution, "private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." In this regard, a compensable taking may occur where the installation of public improvements interferes with a property owner's easement of access to and from his property or otherwise causes substantial damage to his property. See *Dept. of Transp. v. Whitehead*, 253 Ga. 150 (1) (317 SE2d 542) (1984) (interference with easement of access); *Dept. of Transp. v. Bonnett*, 257 Ga. 189 (1) (358 SE2d 245) (1987) (takings clause authorizes nuisance suit against state where public improvements result in partial condemnation of private property). However, a compensable taking does not occur where the complained of government activity merely interferes with a property owner's desire to use a city right-of-way for additional parking. See *Johnson v. Burke County*, 101 Ga. App. 747, 750-751 (115 SE2d 484) (1960). Indeed, "a property right to park in a city [right-of-way] does not exist either as an incident of the right of access or independently of that right." *MARTA v. Datry*, 235 Ga. 568, 576 (I) (220 SE2d 905) (1975).

Here, it is undisputed that the proposed sidewalk is to be constructed on property that is solely within the City's right-of-way. The sidewalk will not impede access to and from Sig Samuels' business, it will merely cover a City-owned area that Sig Samuels has been using for additional customer parking. Even though Sig Samuels has grown accustomed to using the proposed sidewalk area for additional customer parking, this does not change the fact that Sig Samuels does not have an unqualified right to use the area for that purpose. Further, there is no evidence that construction of the sidewalk will result in a continuing nuisance that would entitle Sig Samuels to relief. See *Bonnett*, supra, 257 Ga. at 190 (1). Accordingly, because (1) construction of the sidewalk on the City's right-of-way here does not impair any easement of access to and from the dry cleaning business; (2) there is no evidence that construction of the sidewalk will result in a continuing nuisance; and (3) the sidewalk construction merely deprives Sig Samuels of "the use of the [City's] right-of-way for the unauthorized parking of customers' vehicles" (*Johnson*, supra, 101 Ga. App. at 750-751); the construction of the sidewalk does not constitute a taking for which Sig Samuels must be compensated. Id. at 751. The trial court therefore erred in finding

that Sig Samuels should be compensated for a taking in connection with the City's planned installation of the sidewalk.[1]

2. In addition to having erred by concluding that the City's sidewalk installation would result in a compensable taking, the trial court also erred by ordering the City "to erect signs directing the flow of pedestrian traffic to cross to the opposite side of the street from Sig Samuels in an effort to promote pedestrian safety" for the additional 90 days that the preliminary injunction would be in place. A trial court does not have the authority to "substitute its judgment and discretion for that of the duly elected officials of the city." *City of Carrollton v. Walker*, 215 Ga. 505, 513 (2) (111 SE2d 79) (1959). Decisions regarding how to direct pedestrian traffic on public streets necessarily involve the discretion of City officials. See, e.g., *Riggins v. City of St. Marys*, 264 Ga. App. 95, 101 (2) (589 SE2d 691) (2003) ("Generally, a city's decision regarding whether to install a particular traffic control device at a particular location is discretionary"). The trial court did not have the authority to substitute its judgment for that of the City officials whose responsibility it was to first make a decision as to how they believed pedestrian traffic should be directed on the streets near Sig Samuels.

*Judgment reversed. All the Justices concur.*

DECIDED OCTOBER 29, 2007.

*Robert N. Godfrey, Torrey D. Smith, Elizabeth B. Chandler*, for appellant.

*Lord, Bissell & Brooks, Michael V. Coleman*, for appellee.

---

[1] In this connection, the trial court also erred in ordering the City to make additional parking spaces available on Eighth Street for Sig Samuels. Again, "a property right to park in a city [right-of-way] does not exist either as an incident of [a property owner's] right of access or independently of that right." *Datry*, supra, 235 Ga. at 576. While the City did offer to make more parking spaces available to Sig Samuels to balance out the loss of parking that Sig Samuels would suffer as a result of the City's sidewalk project, it certainly was not obligated to do so.