**October 28, 2022**

# In the Court of Appeals of Georgia

A22A0650. SIEGRIST v. HERHOLD.

RICKMAN, Chief Judge.

Daniel Herhold was hit by a vehicle while attempting to cross Cobb Parkway following a Braves game. He sued Zachary Siegrist, a Cobb County fire inspector who was directing pedestrian foot traffic, in Siegrist's individual capacity, for negligence. Siegrist filed a motion to dismiss the lawsuit pursuant to OCGA § 9-11-12 (b) (1) for lack of subject matter jurisdiction, asserting that he was entitled to official (or qualified) immunity.[1] The trial court denied the motion but issued a certificate of immediate review, and we granted Siegrist's application for

---

[1] Siegrist filed two affidavits in support of his motion to dismiss. "When a motion is based on facts not appearing of record, the court may hear the matter on affidavits presented by the respective parties. A motion to dismiss for lack of jurisdiction of the defendant, when tried on affidavits pursuant to OCGA § 9-11-43 (b), does not become a motion for summary judgment." (Citations and punctuation omitted.) *Terrell v. Porter*, 189 Ga. App. 778, 779 (2) (377 SE2d 540) (1989).

interlocutory review. For the reasons that follow, we affirm the trial court's denial of Siegrist's motion to dismiss.

We review de novo a trial court's ruling on a motion to dismiss based on qualified immunity grounds, which is a matter of law. See *Stephens v. Coan*, 349 Ga. App. 147, 148 (825 SE2d 525) (2019); accord *Wyno v. Lowndes County*, 305 Ga. 523, 527 (3) (824 SE2d 297) (2019) (noting that whether, given the relevant facts, a public employee is entitled to qualified immunity is a question of law). "In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor." (Citation and punctuation omitted.) *Austin v. Clark*, 294 Ga. 773, 775 (755 SE2d 796) (2014).

So viewed, the record shows that the Cobb County Police Department was responsible for developing a safety plan to address vehicular and pedestrian traffic control outside of SunTrust Park on Atlanta Braves game days. The Cobb County Police Department Lieutenant responsible for developing and implementing the plan used certain Cobb County Fire & Emergency Services employees, including members of the Cobb County Marshal's Office, to assist with the pedestrian traffic. Siegrist, a Fire & Life Safety Inspector employed by the Cobb County Marshal's Office, was

one such employee who worked after hours to assist with pedestrian traffic at SunTrust Park.

Pursuant to the safety plan, certain crosswalks around the Braves stadium were closed to pedestrian traffic and pedestrians were required to enter and exit the stadium by crossing roads only at designated locations. Public safety personnel were positioned at crosswalks, including at the northeast and southeast corners of the intersection of Cobb Parkway and Windy Ridge Parkway, to help direct pedestrians navigate that intersection.

In May 2017, Siegrist was stationed at the southeast corner of the intersection of Cobb Parkway and Windy Ridge Parkway to direct pedestrian traffic following a Braves game. A police officer was stationed at the northeast corner. Siegrist's duties included observing cars traveling northbound on Cobb Parkway and turning right onto Windy Ridge Parkway to ascertain that the drivers were paying attention and aware of pedestrians crossing Windy Ridge Parkway; observing pedestrians crossing Windy Ridge Parkway at his intersection to determine whether they had time to cross before the traffic light changed; and directing anyone who attempted to cross Cobb Parkway that they could not cross at that intersection. In determining whether pedestrians could safely cross Windy Ridge Parkway, Siegrist had to consider

3

multiple factors, including the number, age, and agility of the pedestrians seeking to cross, along with the traffic flow.

While Siegrist was directing pedestrians at his intersection, Herhold and his companions attempted to cross nine lanes of traffic on Cobb Parkway outside of the designated crosswalks. Herhold was approximately 30 to 40 yards south of Siegrist's intersection when Siegrist observed him walking in the middle of Cobb Parkway. Northbound traffic on Cobb Parkway had a green light, such that Herhold was in the path of oncoming traffic. Siegrist walked south toward Herhold and shouted to Herhold to get out of the roadway. A few seconds later, Herhold was struck by a vehicle and allegedly suffered severe injuries.

Herhold sued Siegrist in his individual capacity, alleging that Siegrist's negligent performance of his ministerial duties caused Herhold's injuries.[2] Siegrist filed a motion to dismiss for lack of jurisdiction pursuant to OCGA § 9-11-12 (b) (1), asserting that he was entitled to qualified immunity because his management of pedestrian traffic was a discretionary act within the scope of his official functions.

---

[2] Our consideration of this case is limited to the question of Siegrist's qualified immunity and we make no statement as to the merits of Herhold's claims.

Following a hearing, the trial court summarily denied the motion. Siegrist obtained a certificate of immediate review which this Court granted, and this appeal follows.

"The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity." (Citation and punctuation omitted.) *Grammens v. Dollar*, 287 Ga. 618, 619 (697 SE2d 775) (2010). Public officers and employees "may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d); *Gilbert v. Richardson*, 264 Ga. 744, 752 (6) (452 SE2d 476) (1994). The term "official functions" means "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts." *Gilbert*, 264 Ga. at 752 (6). One's entitlement to qualified immunity "is an entitlement not to stand trial rather than a mere defense to liability," and thus is a threshold issue that must be decided at the earliest practicable opportunity. (Citation and punctuation omitted.) *Cameron v. Lang*, 274 Ga. 122, 124 (3) (549 SE2d 341) (2001).

5

Siegrist contends that the trial court erred by denying his motion to dismiss for lack of subject matter jurisdiction on the basis of qualified immunity. Herhold asserts that Siegrist is not entitled to qualified immunity, both because his acts were ministerial in nature and because he was acting outside of the scope of his official functions when he was directing pedestrian traffic. We will address each in turn.

(a) Within the context of the qualified immunity analysis, "[a] ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." (Citation and punctuation omitted.) *McDowell v. Smith*, 285 Ga. 592, 593 (678 SE2d 922) (2009). By contrast, "[a] discretionary act . . . calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." (Citation and punctuation omitted.) Id. at 593. Whether an action is discretionary or ministerial "depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis." (Citation and punctuation omitted.) Id. at 594-595.

We have little trouble concluding that Siegrist's actions in responding to Herhold's attempt to cross nine lanes of traffic at an unauthorized location when

6

Siegrist was responsible for managing foot traffic at a nearby intersection were discretionary in nature. Both Siegrist and the lieutenant averred in their affidavits that when determining how to best manage pedestrian traffic attempting to cross the street, Siegrist was required to constantly assess driver attentiveness, the timing of the lights, the size of the crowd, and the age and agility of the individual pedestrians in order to determine whether to allow them to cross during any given light cycle. As to the specific acts in question, Siegrist averred that upon seeing Herhold in the roadway and realizing that the traffic light had turned green such that Herhold was going to be in the path of oncoming traffic, he considered it an emergency situation and made a "split-second decision" to walk south of his intersection and shout to Herhold to get out of the road. There is simply nothing in the nature of the job in general or the facts specific to this case from which to conclude that Siegrist was operating under a "simple, absolute, and definite" directive with regard to pedestrian traffic management. See *McDowell*, 285 Ga. at 593. Rather, in deciding to move toward Herhold and shout at him as he attempted to cross the roadway at an unauthorized location, Siegrist's acts were discretionary. See *Odum v. Harn*, 350 Ga. App. 572, 574-575 (829 SE2d 818) (2019) (holding that bus driver's release of children at bus stop required "exercising discretionary judgment as to whether any vehicles on the

7

same road were stationary or moving toward the bus such that the child should or should not be released"); *Llewelyn v. Bryant*, 349 Ga. App. 274, 277 (825 SE2d 614) (2019) (holding that assistant principal's supervision of children as they exited school buses was discretionary); see also *City of Atlanta v. Sig Samuels Laundry & Dry Cleaning*, 282 Ga. 586, 588 (2) (652 SE2d 533) (2007) (noting generally that "[d]ecisions regarding how to direct pedestrian traffic on public streets necessarily involve" discretion).

(b) Nevertheless, the record is less clear with respect to whether Siegrist was performing his official functions so as to cloak him with qualified immunity when he was directing post-game pedestrian traffic. See *Gilbert*, 264 Ga. at 752-753 (6). To be sure, Siegrist was acting at the directive of the lieutenant and in accordance with the developed safety plan. But there is nothing in the current record from which to determine through his training or otherwise that pedestrian traffic management fell within the scope of Siegrist's authority as a Fire & Life Safety Inspector. The only evidence even arguably relevant to the subject is the lieutenant's general statement in his affidavit that certain members from the Cobb County Marshal's Office were "eligible" to work after hours with traffic assistance. For that reason, the trial court

did not err by denying Siegrist's motion to dismiss on the present record.

*Judgment affirmed. Miller, P. J., and Pipkin, J., concur.*